IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JEANETTE LEANN HUNTER, ) | Case No. 18-80810 |
| ) | Chapter 11 |
| ) | |
| Debtor-in-Possession. ) | |

## MOTION FOR ORDER APPROVING PRIVATE SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Jeanette Leann Hunter, Debtor-in-Possession ("Hunter") moves this Court for authority to sell the estate's interest in property of this Estate free and clear of all liens, claims, encumbrances and other interests pursuant to 11 U.S.C. §363(b)(1) and (f), applicable state law and Bankruptcy Rules 2002(a)(2) and (c) and 6004(a), (c) and (f). In support, Hunter shows this Court as follows:

1. Hunter filed a Voluntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code on July 23, 2018; and since such date has continued in possession of her property and operation of her business as Debtor-in-Possession.

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §157. Venue of this proceeding is proper pursuant to 28 U.S.C. §§1408 and 1409.

3. Pursuant to 11 U.S.C. §541, property of the Estate includes the following described real property:

> A tract of land in Lot 10 of Harvison Subdivision to the City of Muskogee, State of Oklahoma, more particularly described as follows: Beginning at a point of 60.0' South and 25.0' East of the Northwest corner of said Lot 10; thence East of the Northwest corner of said Lot 10; thence East along a line parallel to the North line of said Lot 10, a distance of 300.00'; thence South along a line parallel to the West line of said Lot 10, a distance of 200.0'; thence West along a line parallel to the North line of said Lot 10, a distance of 300.0'; thence North along a line parallel to the West line of said Lot 10, a distance of 200.0' to the point of beginning, being platted

out of a part of the NW1/4 of the NW1/4 and part of the W1/2 of the SW1/4 of the NW1/4 and a part of the N1/2 of the NE1/4 of the SW1/4 of the NW1/4 and a part of the SW1/4 of the NE1/4 of the SW1/4 of the NW1/4 of Section 24, Township 15 North, Range 18 East of the Indian Base and Meridian, Muskogee County, Oklahoma (the "Property").

4. Hunter has received an offer to purchase the Property from Elder Agency, LLC in the sum of $210,000.00.

5. Subject to Bankruptcy Court approval, Hunter is proposing to sell the Property, free and clear of all liens, claims, encumbrances and other interest, as set forth in the Oklahoma Uniform Contract of Sale of Real Estate (the "Contract"). A copy of the Contract is attached as Exhibit "A".

6. Hunter is aware of liens encumbering the Property.

7. Terry Burnett Trust, Michael G. Davis and Annette E. Davis (the "Burnett Trust") filed a Proof of Claim [Claim No. 8] in this case asserting a secured claim in the sum of $237,615.12. Hunter and the Burnett Trust have negotiated an allowed secured claim in the sum of $128,874.55. By separate motion, Hunter will seek authority from this Court to satisfy the secured claim of the Burnett Trust directly at closing.

8. Finesse Construction, LLC ("Finesse Construction") filed a Proof of Claim [Claim No. 3] in this case asserting a secured claim in the sum of $61,964.51. Hunter and Finesse Construction have negotiated an allowed secured claim in the sum of $46,843.82. By separate motion, Hunter will seek authority from this Court to satisfy the secured claim of Finesse Construction directly at closing.

9. The Muskogee County Treasurer ("Muskogee County") filed a Proof of Claim [Claim No. 7] in the sum of $17,552.43. Hunter believes that the majority of this claim encumbers

real estate other than the Property. To the extent valid, the claim of Muskogee County will be paid directly at closing.

## TERMS OF SALE

10. Subject to Bankruptcy Court approval, Hunter has entered into the Contract. The terms of the sale are included in the Contract which is attached as Exhibit "A".

11. In summary, the Contract terms include:

   a. The purchase price is $210,000.00;

   b. The purchaser is Elder Agency, LLC or its assigns;

   c. The Property shall be sold in "as is" where is" condition;

   d. Hunter will pay the cost to bring the abstract up to date, documentary stamps and seller's typical closing costs.

12. A closing for the sale of the Property shall be held within 30 days of the entry of the Order approving sale.

13. Sale of the Property is not subject to or conditioned upon financing.

14. No representations, expressed or implied, concerning the Property are or have made by Hunter, other than what is set forth herein.

Wherefore, Jeanette Hunter, Debtor-in-Possession, moves this Court to approve (a) the Contract for the sale of the Property to Elder Agency, LLC for $210,000.00 and (b) for such other and further relief as this Court deems just and proper.

3
Case 18-80810    Doc 90    Filed 01/11/19    Entered 01/11/19 08:13:11    Desc Main
                           Document      Page 3 of 10

Respectfully Submitted,

RIGGS, ABNEY, NEAL,
TURPEN, ORBISON & LEWIS

S/Karen Carden Walsh
Karen Carden Walsh  OBA No. 14690
502 West 6th Street
Tulsa, Oklahoma  74119-1010
(918) 587-3161
Fax No. (918) 587-9708
Attorneys for Jeanette Hunter

**OKLAHOMA REAL ESTATE COMMISSION**
This is a legally binding Contract;
if not understood seek advice from an attorney
**OKLAHOMA UNIFORM CONTRACT OF
SALE OF REAL ESTATE
(SURFACE RIGHTS ONLY)**

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

**CONTRACT DOCUMENTS.** The Contract is defined as this document with the following attachment(s):
(check as applicable)

___ Conventional Supplemental  ___ Single Family Homeowner's Association Supplemental
___ FHA Supplemental  ___ Condominium/Townhouse Association Supplemental
___ VA Supplemental  ___ Supplemental Addendum
___ Assumption/Other  ✔ Commercial

**PARTIES.** THE CONTRACT is entered into between:
Jeanette Leann Hunter d/b/a Hunter Enterprises _____ "Seller"
and Elder Agency, LLC _____ "Buyer".

The Parties' signatures at the end of the Contract, which includes any attachments or documents incorporated by reference, with delivery to their respective Brokers, if applicable, will create a valid and binding Contract, which sets forth their complete understanding of the terms of the Contract. The Contract shall be executed by original signatures of the parties or by signatures as reflected on separate identical Contract counterparts (carbon, photo or fax copies). All prior verbal or written negotiations, representations and agreements are superceded by the Contract, which may only be modified or assigned by a further written agreement of Buyer and Seller.

Seller agrees to sell and convey by General Warranty Deed, and Buyer agrees to accept such deed and buy the Property described herein, on the following terms and conditions:

The Property shall consist of the following described real estate located in Muskogee County, Oklahoma.

**1. LEGAL DESCRIPTION.** Indian Springs Executive Center; 1320 North Mill Street, Muskogee, OK

_____
Property Address                              City                              Zip

Together with all fixtures and improvements, and all appurtenances, subject to existing zoning ordinances, plat or deed restrictions, utility easements serving the Property, (collectively referred to as "the Property"); **less and except** all the oil, gas and other minerals in and under and that may be produced from the Property.

**2. PURCHASE PRICE, EARNEST MONEY AND SOURCE OF FUNDS.** This is a CASH TRANSACTION unless a Financing Supplement Agreement is attached. The Purchase Price is $ 210,000.00 payable by Buyer as follows: Buyer has paid $ 500.00 as Earnest Money on execution of the Contract, and Buyer shall pay the balance of the purchase price and Buyer's Closing costs at Closing. Upon execution of the Contract, the Earnest Money shall be deposited in the trust account of _____ or if left blank, the Listing Broker's trust account, as part payment of the purchase price and/or closing costs. Once established, if interest accrues on Earnest Money Deposit in Listing Broker's trust account, said interest shall be paid to "Oklahoma Housing Foundation".

**3. CLOSING, FUNDING AND POSSESSION.** The Closing process includes execution of documents, delivery of deed and receipt of funds by Seller and shall be completed on or before 60 days after approval by the BK Court , ("Closing Date") or not later than five (5) days thereafter caused by a delay of the Closing process, or such later date as may be necessary in the Title Evidence provision (reference Paragraph 10 D and E). Possession shall be transferred upon conclusion of Closing process unless otherwise provided below:
_____.

In addition to costs and expenses otherwise required to be paid in accordance with terms of the Contract, Buyer shall pay Buyer's Closing fee, Buyer's recording fees, and all other expenses required from Buyer. Seller shall pay documentary stamps required, Seller's Closing fee, Seller's recording fees, if any, and all other expenses required from Seller. Funds required from Buyer and Seller at Closing shall be either cash, cashier's check or wire transfer.

OREC CONTRACT OF SALE (11-2009)                                                      Page 1 of 6


EXHIBIT A

4. **ACCESSORIES, EQUIPMENT AND SYSTEMS.** The following items, if existing on the Property, unless otherwise excluded, shall remain with the Property at no additional cost to Buyer:

   - Attic and ceiling fan(s)
   - Bathroom mirror(s)
   - Other mirrors, if attached
   - Central vacuum & attachments
   - Floor coverings, if attached
   - Key(s) to the property
   - Built-in and under cabinet/counter appliance(s)
   - Free standing slide-in/drop-in kitchen stove
   - Built-in sound system(s)/speaker(s)
   - Lighting & light fixtures
   - Fire, smoke and security system(s), if owned
   - Shelving, if attached
   - Fireplace inserts, logs, grates, doors and screens
   - Free standing heating unit(s)
   - Humidifier(s), if attached
   - Water conditioning systems, if owned
   - Window treatments & coverings, interior & exterior
   - Storm windows, screens & storm doors
   - Garage door opener(s) & remote transmitting unit(s)
   - Fences (includes sub-surface electric & components)
   - Mailboxes/Flag poles
   - Outside cooking unit(s), if attached
   - Propane tank(s) if owned
   - TV antennas/satellite dish system(s) and control(s), if owned
   - Sprinkler systems & control(s)
   - Swimming Pool/Spa equipment/ accessories
   - Attached recreational equipment
   - Exterior landscaping and lighting
   - Entry gate control(s)
   - Water meter, sewer/trash membership, if owned
   - All remote controls, if applicable
   - Transferable Service Agreements and Product Warranties

   A. **Additional Inclusions.** The following items shall also remain with the Property at no additional cost to Buyer: _____

   B. **Exclusions.** The following items shall not remain with the Property: _____

5. **TIME PERIODS SPECIFIED IN CONTRACT.** Time periods for Investigations, Inspections and Reviews and Financing Supplement Agreement shall commence on _____ (**Time Reference Date**), regardless of the date the Contract is signed by Buyer and Seller. The day after the Time Reference Date shall be counted as day one (1). If left blank, the Time Reference Date shall be the third day after the last date of signatures of the parties.

6. **RESIDENTIAL PROPERTY CONDITION DISCLOSURE.** No representations by Seller regarding the condition of Property or environmental hazards are expressed or implied, other than as specified in the Oklahoma Residential Property Condition Disclosure Statement ("Disclosure Statement") or the Oklahoma Property Condition Disclaimer Statement ("Disclaimer Statement"), if applicable. A real estate licensee has no duty to Seller or Buyer to conduct an independent inspection of the Property and has no duty to independently verify accuracy or completeness of any statement made by Seller in the Disclosure Statement and any amendment or the Disclaimer Statement.

7. **INVESTIGATIONS, INSPECTIONS and REVIEWS.**

   A. Buyer shall have _____ days (10 days if left blank) after the Time Reference Date to complete any investigations, inspections, and reviews. Seller shall have water, gas and electricity turned on and serving the Property for Buyer's inspections, and through the date of possession or Closing, whichever occurs first. If required by ordinance, Seller, or Seller's Broker, if applicable, shall deliver to Buyer, in care of Buyer's Broker, if applicable, within five (5) days after the Time Reference Date any written notices affecting the Property.

   B. Buyer, together with persons deemed qualified by Buyer and at Buyer's expense, shall have the right to enter upon the Property to conduct any and all investigations, inspections, and reviews of the Property. Buyer's right to enter upon the Property shall extend to Oklahoma licensed Home Inspectors and licensed architects for purposes of performing a home inspection. Buyer's right to enter upon the Property shall also extend to registered professional engineers, professional craftsman and/or other individuals retained by Buyer to perform a limited or specialized investigation, inspection or review of the Property pursuant to a license or registration from the appropriate State licensing board, commission or department. Finally, Buyer's right to enter upon the Property shall extend to any other person representing Buyer to conduct an investigation, inspection and/or review which is lawful but otherwise unregulated or unlicensed under Oklahoma Law. Buyer's investigations, inspections, and reviews may include, but not be limited to, the following:

   1) **Disclosure Statement or Disclaimer Statement unless exempt**
   2) **Flood, Storm Run off Water, Storm Sewer Backup or Water History**
   3) **Psychologically Impacted Property and Megan's Law**
   4) **Hazard Insurance** (Property insurability)
   5) **Environmental Risks**, including, but not limited to soil, air, water, hydrocarbon, chemical, carbon, asbestos, mold, radon gas, lead-based paint
   6) **Roof,** structural members, roof decking, coverings and related components
   7) **Home Inspection**
   8) **Structural Inspection**
   9) **Fixtures, Equipment and Systems Inspection.** All fixtures, equipment and systems relating to plumbing (including sewer/septic system and water supply), heating, cooling, electrical, built-in appliances, swimming pool, spa, sprinkler systems, and security systems

PROPERTY ADDRESS 1320 North Mill Street, Muskogee, OK 74401

10) **Termites and other Wood Destroying Insects Inspection**
11) **Use of Property.** Property use restrictions, building restrictions, easements, restrictive covenants, zoning ordinances and regulations, mandatory Homeowner Associations and dues
12) **Square Footage.** Buyer shall not rely on any quoted square footage and shall have the right to measure the Property.
13) _____

## C. TREATMENTS, REPAIRS AND REPLACEMENTS (TRR).

1) **TERMITE TREATMENTS AND OTHER WOOD DESTROYING INSECTS.** Seller's obligation to pay treatment and repair cost in relation to termites and other wood destroying insects shall be limited to the residential structure, garage(s) and other structures as designated in Paragraph 13 and as provided in subparagraph C2b below.

2) **TREATMENTS, REPAIRS, REPLACEMENTS AND REVIEWS.** Buyer or Buyer's Broker, if applicable, within 24 hours after expiration of the time period referenced in 7A, shall deliver to Seller, in care of the Seller's Broker, if applicable, a copy of all written reports obtained by Buyer, if any, pertaining to the Property and Buyer shall select one of the following:

   a. If, in the sole opinion of the Buyer, results of Investigations, Inspections or Reviews are unsatisfactory, the Buyer may cancel the Contract by delivering written notice of cancellation to Seller, in care of Seller's Broker, if applicable, and receive refund of Earnest Money.

   **OR**

   b. Buyer, upon completion of all Investigations, Inspections and Reviews, waives Buyer's right to cancel as provided in Paragraph 7, subparagraph C2a above, by delivering to Seller, in care of Seller's Broker, if applicable, a written list on a Notice of Treatments, Repairs, and Replacements form (TRR form) of those items to be treated, repaired or replaced (including repairs caused by termites and other wood destroying insects) that are not in normal working order (defined as the system or component functions without defect for the primary purpose and manner for which it was installed. Defect means a condition, malfunction or problem, which is not decorative, that will have a materially adverse effect on the value of a system or component).

      i. Seller shall have _____ days (5 days if blank) after receipt of the completed TRR form from Seller's Broker, if applicable, to obtain costs estimates. Seller agrees to pay up to $_____ ("Repair Cap") of costs of TRR's. If Seller, or Seller's Broker, if applicable, obtains cost estimates which exceed Repair Cap, Seller, or Seller's Broker, if applicable, shall notify Buyer or Buyer's Broker, if applicable, in writing, within two days after receipt of cost estimates.

      If the amount of the TRR's exceed the amount of the Repair Cap, Buyer and Seller shall have _____ days (3 days if blank) thereafter to negotiate the payment of costs in excess of Repair Cap. If a written agreement is reached, Seller shall complete all agreed TRR's prior to the Closing Date. If an agreement is not reached within the time specified in this provision, the Contract shall become null and void and Earnest Money returned to Buyer.

      ii. If Seller fails to obtain cost estimates within the stated time, Buyer shall then have _____ days (5 days if blank) to:

         a) Enter upon the Property to obtain costs estimates and require Seller to be responsible for all TRR's as noted on Buyer's TRR form, up to the Repair Cap; and,

         b) If the amount of the TRR's exceed the amount of the Repair Cap, Buyer and Seller shall have _____ days (3 days if blank) thereafter to negotiate the payment of costs in excess of Repair Cap. If a written agreement is reached, Seller shall complete all agreed TRR's prior to the Closing Date. If an agreement is not reached within the time specified in this provision, the Contract shall become null and void and Earnest Money returned to Buyer.

## D. EXPIRATION OF BUYER'S RIGHT TO CANCEL CONTRACT.

1) Failure of Buyer to complete one of the following shall constitute acceptance of the Property regardless of its condition:
   a. Perform any Investigations, Inspections or Reviews;
   b. Deliver a written list on a TRR form of items to be treated, repaired and replaced; or
   c. Cancel the Contract within the time periods in Investigations, Inspections or Reviews Paragraph.

2) After expiration of the time periods in Investigations, Inspections and Reviews Paragraph, Buyer's inability to obtain a loan based on unavailability of hazard insurance coverage shall not relieve the Buyer of the obligation to close transaction.

3) After expiration of the time periods in Investigations, Inspections and Reviews Paragraph, any square footage calculation of the dwelling, including but not limited to appraisal or survey, indicating more or less than quoted, shall not relieve the Buyer of the obligation to close this transaction.

PROPERTY ADDRESS 1320 North Mill Street, Muskogee, OK 74401

### E. INSPECTION OF TREATMENTS, REPAIRS AND REPLACEMENTS AND FINAL WALK-THROUGH.

1) Buyer, or other persons Buyer deems qualified, may perform re-inspections of Property pertaining to Treatments, Repairs and Replacements.

2) Buyer may perform a final walk-through inspection, which Seller may attend. Seller shall deliver Property in the same condition as it was on the date upon which Contract was signed by Buyer (ordinary wear and tear excepted) subject to Treatments, Repairs and Replacements.

3) All inspections and re-inspections shall be paid by Buyer, unless prohibited by mortgage lender.

8. **RISK OF LOSS.** Until transfer of Title or transfer of possession, risk of loss to the Property, ordinary wear and tear excepted, shall be upon Seller; after transfer of Title or transfer of possession, risk of loss shall be upon Buyer. (Parties are advised to address insurance coverage regarding transfer of possession prior to Closing.)

9. **ACCEPTANCE OF PROPERTY.** Buyer, upon accepting Title or transfer of possession of the Property, shall be deemed to have accepted the Property in its then condition. No warranties, expressed or implied, by Sellers, Brokers and/or their associated licensees, with reference to the condition of the Property, shall be deemed to survive the Closing.

10. **TITLE EVIDENCE.**

    A. **BUYER'S EXPENSE.** Buyer, at Buyer's expense, shall obtain:
    (Check one)
    
    ☑ **Attorney's Title Opinion**, which is not rendered for Title Insurance purposes.
    
    OR
    
    ☐ **Commitment for Issuance of a Title Insurance Policy** based on an Attorney's Title Opinion which is rendered for Title Insurance purposes for the Owner's and Lender's Title Insurance Policy.

    B. **SELLER'S EXPENSE.** Seller, at Seller's expense, within thirty (30) days prior to Closing Date, agrees to make available to Buyer the following (*collectively referred to as "the Title Evidence"*):

    1) A complete surface-rights-only Abstract of Title, last certified to a date subsequent to the Time Reference Date, by an Oklahoma licensed and bonded abstract company;
    
       OR
       
       A copy of Seller's existing owner's title insurance policy issued by a title insurer licensed in the State of Oklahoma together with a supplemental surface-rights-only abstract last certified to a date subsequent to the Time Reference Date, by an Oklahoma licensed and bonded abstract company;

    2) A current Uniform Commercial Code Search Certificate; and

    3) An inspection certificate (commonly referred to as a "Mortgage Inspection Certificate") prepared subsequent to the Time Reference Date by a licensed surveyor, which shall include a representation of the boundaries of the Property (without pin stakes) and the improvements thereon.

    C. **LAND OR BOUNDARY SURVEY.** By initialing this space <u>JBP</u>, Buyer agrees to waive Seller's obligation to provide a Mortgage Inspection Certificate. Seller agrees that Buyer, at Buyer's expense, may have a licensed surveyor enter upon the Property to perform a <u>Land or Boundary (Pin Stake) Survey</u>, in lieu of a Mortgage Inspection Certificate, that shall then be considered as part of the Title Evidence.

    D. **BUYER TO EXAMINE TITLE EVIDENCE.**

    1) Buyer shall have ten (10) days after receipt to examine the Title Evidence and to deliver Buyer's objections to Title to Seller or Seller's Broker, if applicable. In the event the Title Evidence is not made available to Buyer within ten (10) days prior to Closing Date, said Closing Date shall be extended to allow Buyer the ten (10) days from receipt to examine the Title Evidence.

    2) Buyer agrees to accept title subject to: (i) utility easements serving the property, (ii) building and use restrictions of record, (iii) set back and building lines, (iv) zoning regulations, and (v) reserved and severed mineral rights, which shall not be considered objections for requirements of Title.

    E. **SELLER TO CORRECT ISSUES WITH TITLE (IF APPLICABLE), POSSIBLE CLOSING DELAY.** Upon receipt by Seller, or in care of Seller's Broker, if applicable, of any title requirements reflected in an Attorney's Title Opinion or Title Insurance Commitment, based upon the standard of marketable title set out in the Title Examination Standards of the Oklahoma Bar Association, the parties agree to the following:

    1) Seller, at Seller's expense, shall make reasonable efforts to obtain and/or execute all documents necessary to cure title requirements identified by Buyer; and

PROPERTY ADDRESS 1320 North Mill Street, Muskogee, OK 74401

2) Delay Closing Date for _____ days [thirty (30) days if blank], or a longer period as may be agreed upon in writing, to allow Seller to cure Buyer's title requirements. In the event Seller cures Buyer's objection prior to the delayed Closing Date, Buyer and Seller agree to close within five (5) days of notice of such cure. In the event that title requirements are not cured within the time specified in this subparagraph, the Buyer may cancel the Contract and receive a refund of Earnest Money.

F. Upon Closing, any existing Abstract(s) of Title, owned by Seller, shall become the property of Buyer.

## 11. TAXES, ASSESSMENTS AND PRORATIONS.

A. The following items shall be prorated to include the date of Closing: (i) General ad valorem taxes for the current calendar year, if certified. However, if the amount of such taxes has not been fixed, the proration shall be based upon the rate of levy for the previous calendar year and the most current assessed value available at the time of Closing; and (ii) Homeowner's Association assessments and dues, if any, based on most recent assessments.

B. The following items shall be paid by Seller at Closing: (i) All special assessments against the Property (matured or not matured), whether or not payable in installments; (ii) Documentary Stamps; (iii) all utility bills, actual or estimated; (iv) all taxes other than general ad valorem taxes which are or may become a lien against the Property; (v) any labor, materials, or other expenses related to the Property, incurred prior to Closing which is or may become a lien against the Property.

C. At Closing all leases, if any, shall be assigned to Buyer and security deposits, if any, shall be transferred to Buyer. Prepaid rent and lease payments shall be prorated through the date of Closing.

D. If applicable, membership and meters in utility districts to include, but not limited to, water, sewer, ambulance, fire, garbage, shall be transferred at no cost to Buyer at Closing.

## 12. RESIDENTIAL SERVICE AGREEMENT.
(CHECK ONE)

A. ☑ The Property shall not be covered by a Residential Service Agreement.

B. ☐ Seller currently has a Residential Service Agreement in effect on the Property. Seller, at Seller's expense, shall transfer the agreement with one (1) year coverage to the Buyer at Closing.

C. ☐ The Property shall be covered by a Residential Service Agreement selected by the Buyer at an approximate cost of $_____. Seller agrees to pay $_____ and Buyer agrees to pay the balance.

The Seller and Buyer acknowledge that the real estate broker(s) may receive a service/administration fee for the referral and processing of the Residential Service Agreement.

Buyer acknowledges that a Residential Service Agreement does not replace/substitute Property inspection rights.

## 13. ADDITIONAL PROVISIONS.

This agreement is subject to approval by the United States Bankruptcy Court for the Eastern District of Oklahoma. Neither party shal

be held responsible in the event this sale is not approved by the Court.

## 14. MEDIATION.
Any dispute arising with respect to the Contract shall first be submitted to a dispute resolution mediation system servicing the area in which the Property is located. Any settlement agreement shall be binding. In the event an agreement is not reached, the parties may pursue legal remedies as provided by the Contract.

## 15. BREACH AND FAILURE TO CLOSE.

A. UPON BREACH BY SELLER. If the Buyer performs all of the obligations of Buyer, and if, within five (5) days after the date specified for Closing under Paragraph 3, Seller fails to convey the Title or fails to perform any other obligations of the Seller under this Contract, then Buyer shall be entitled to either cancel and terminate this Contract, return the abstract to Seller and receive a refund of the Earnest Money, or pursue any other remedy available at law or in equity, including specific performance.

B. UPON BREACH BY BUYER. If, after the Seller has performed Seller's obligation under this Contract, and if, within five (5) days after the date specified for Closing under Paragraph 3, the Buyer fails to provide funding, or to perform any other obligations of the Buyer under this Contract, then the Seller may, at Seller's option, cancel and terminate this Contract and retain all sums paid by the Buyer, but not to exceed 5% of the purchase price, as liquidated damages, or pursue any other remedy available at law or in equity, including specific performance.

PROPERTY ADDRESS _____

## 16. INCURRED EXPENSES AND RELEASE OF EARNEST MONEY.

   A. **INCURRED EXPENSES.** Buyer and Seller agree that any expenses, incurred on their behalf, shall be paid by the party incurring such expenses and shall not be paid from Earnest Money.

   B. **RELEASE OF EARNEST MONEY.** In the event a dispute arises prior to the release of Earnest Money held in escrow, the escrow holder shall retain said Earnest Money until one of the following occur:

   1) A written release is executed by Buyer and Seller agreeing to its disbursement;
   2) Agreement of disbursement is reached through Mediation;
   3) Interpleader or legal action is filed, at which time the Earnest Money shall be deposited with the Court Clerk; or
   4) The passage of thirty (30) days from the date of final termination of the Contract has occurred and options 1), 2) or 3) above have not been exercised; Broker escrow holder, at Broker's discretion, may disburse Earnest Money. Such disbursement may be made only after fifteen (15) days written notice to Buyer and Seller at their last known address stating the escrow holder's proposed disbursement.

## 17. DELIVERY OF ACCEPTANCE OF OFFER OR COUNTEROFFER.
The Buyer and Seller authorize their respective Brokers, if applicable, to receive delivery of an accepted offer or counteroffer.

## 18. NON-FOREIGN SELLER.
Seller represents that at the time of acceptance of this contract and at the time of Closing, Seller is not a "foreign person" as such term is defined in the Foreign Investments in Real Property Tax Act of 1980 (26 USC Section 1445(f) et. Sec) ("FIRPTA"). If either the sales price of the property exceeds $300,000.00 or the buyer does not intend to use the property as a primary residence then, at the Closing, and as a condition thereto, Seller, or Seller's Broker, if applicable, shall furnish to Buyer, in care of Buyer's Broker, if applicable, an affidavit, in a form and substance acceptable to Buyer, signed under penalty of perjury containing Seller's United States Social Security and/or taxpayer identification numbers and a declaration to the effect that Seller is not a foreign person within the meaning of Section "FIRPTA."

## 19. EXECUTION BY PARTIES.

**AGREED TO BY BUYER:**
On This Date December 15, 2018
Elder Agency, LLC
Buyer's Printed Name
_[signature]_
Buyer's Signature

Buyer's Printed Name

Buyer's Signature

**AGREED TO BY SELLER:**
On This Date December _____, 2018
Jeanette Hunter
Seller's Printed Name
_Jeanette Hunter_ [signature]
Seller's Signature
Hunter Enterprises

Seller's Printed Name

Seller's Signature

**TERMINATION OF OFFER.** The above Offer shall automatically terminate on _____ at 5:00 p.m., unless withdrawn prior to acceptance or termination.

### EARNEST MONEY RECEIPT AND INSTRUCTIONS

Receipt of $_____ ☐ Check ☐ Cash as Earnest Money Deposit, to be deposited in accordance with the terms and conditions of PURCHASE PRICE, EARNEST MONEY, AND SOURCE OF FUNDS Paragraph. Broker(s) acknowledges receipt of Earnest Money and Listing Broker, if applicable, shall deposit said funds in accordance with Paragraph 2 of this Contract. If deposited in an escrow account other than the Listing Broker, the Listing Broker, if applicable, shall provide a copy of receipt to the Selling Broker.

Date ____ Selling Broker/Associate Signature

Date ____ Listing Broker/Associate Signature

(Print Name) Selling Broker/Associate

(Print Name) Listing Broker/Associate

Company Name

Company Name

Address _____ Phone _____

Address _____ Phone _____

Case 18-80810   Doc 90   Filed 01/11/19   Entered 01/11/19 08:13:11   Desc Main
Document      Page 10 of 10