IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE: )
)
JEANETTE LEANN HUNTER, ) Case No. 18-80810
) Chapter 11
)
Debtor-In-Possession. )

## DISCLOSURE STATEMENT

RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS

Karen Carden Walsh, OBA #14690
502 West 6th Street
Tulsa, Oklahoma   74119-1010
(918) 587-3161
(918) 587-9708 (fax)
kwalsh@riggsabney.com

Dated: March 5, 2019                           Attorney for Debtor-In-Possession

1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE: )
)
JEANETTE LEANN HUNTER, ) Case No. 18-80810
) Chapter 11
)
Debtor-In-Possession. )

## DISCLOSURE STATEMENT

### I. INTRODUCTION

Jeanette Leann Hunter (the "Debtor") is a married woman living in Muskogee, Oklahoma with her teenaged daughter. The Debtor is married, but is living separately from her husband, who also lives in Muskogee, Oklahoma. The Debtor is self-employed, owning and operating various commercial and residential rental properties. The Debtor is providing this disclosure statement (the "Disclosure Statement") to all of her known creditors in connection with the Debtor's Plan of Reorganization (the "Plan"). A copy of the Plan accompanies this Disclosure Statement. The Plan was developed based upon a thorough review and analysis of the Debtor's current income and expenses. The Plan provides contribution of the Debtor's net future earnings to pay her Allowed Secured Claims, Allowed Administrative Expenses, and Allowed Priority and General Unsecured Claims during a 60-month Plan term. The Debtor has concluded that the Plan provides fair and equitable treatment of all Classes of creditors and the greatest feasible recovery to creditors. Accordingly, the Debtor requests that all Classes of creditors vote to accept the Plan.

### II. THE PURPOSE OF A DISCLOSURE STATEMENT

This Disclosure Statement is distributed pursuant to the provisions of Section 1125 of the Bankruptcy Code which requires a copy of the Plan and a written Disclosure Statement to be submitted to the creditors and other interested parties if their acceptance of the Plan is being solicited. Specifically, the purpose of this Disclosure Statement is to give creditors and other interested parties sufficient information, as far as it is reasonably practicable for the Debtor to provide, that would allow a hypothetical reasonable investor typical of the creditors of this Case to make an informed judgment whether to accept or reject the Plan. Terms defined in the Plan shall have the same meaning in this Disclosure Statement. Please refer to the Plan for the treatment of all creditors. The provisions of the Plan are binding on all creditors; therefore, please read the Plan carefully.

### III. THE PROCEDURE FOR CONFIRMATION OF THE PLAN

3.1  Approval of the Disclosure Statement

Approval of the Disclosure Statement was set for the ___ day of _____, 2019.

2

### 3.2 The Confirmation Hearing

The Bankruptcy Court has set for the _____ day of _____, 2019 at 9:00 a.m. as the time and date for the hearing for the acceptance and confirmation of the Plan. Any objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for the Debtor on or before the ___ day of _____, 2019.

### 3.3 Voting Requirements for Confirmation

A. As a creditor your vote is important. The Bankruptcy Court must determine, among other things, if the Plan has been accepted by each Impaired Class. Under 11 U.S.C. Section 1126(c), an Impaired Class of Claims is deemed to have accepted the Plan, if Class members holding two-thirds in amount and more than one-half in number of the Claims in each Impaired Class of Claims **actually voting** have voted in favor of the Plan. Classes which are not impaired by the Plan are conclusively presumed to have accepted the Plan.

B. The Court may confirm the Plan notwithstanding the fact that one or more Impaired Classes have rejected the Plan if at least one Impaired Class has accepted the Plan; and the Court finds all other requirements of Confirmation under 11 U.S.C. Section 1129 (a), are satisfied; and requires generally (i) the Plan does not discriminate unfairly, and is fair and equitable with respect to each Impaired Class which has not accepted the Plan , and (ii) either the value of property distributed in the Plan to the objecting unsecured creditor must be no less than the value of that unsecured Claim or else the value of all property distributed under the Plan must be no less than the projected disposable income of the Debtor for the longer of a five-year period or the period for which the Plan provides for payments. These are complex statutory provisions and this summary is not intended to be a complete statement of the law.

C. If the Plan is not accepted by all Impaired Classes, the Debtor will rely on the "cramdown" provisions of 11 U.S.C. Section 1129(b) and seek confirmation of the Plan.

### 3.4 Voting Procedure

**In order for a vote to be counted, all Creditors may cast their votes for or against the plan by completing, dating, signing and mailing the Ballot accompanying this Disclosure Statement to:**

**KAREN WALSH**
**502 West 6th Street**
**Tulsa, Oklahoma 74119-1010**

**Ballots must be received by the ___ day of _____, 2019.**

## IV. BACKGROUND INFORMATION ABOUT THE DEBTOR

### 4.1 In General

The Debtor is self-employed in the business of owning and renting commercial and residential real property.

### 4.2 The Factors Precipitating a Chapter 11 Filing

The Debtor's financial trouble began in 2014 with the loss of monthly rental income due to relocating tenants. Also in 2014, a roofing company commenced litigation in Texas, causing the Debtor to pay unexpected legal fees out-of-pocket. In 2016, the Debtor experienced further loss of monthly rental income due to relocating tenants. Finally, in February 2016, the roof collapsed on the Royal Casket building.

### 4.3 The Debtor's Future

The Debtor has made consistent and effective efforts to increase occupancy and shall continue her business of owning and renting residential and commercial real estate. A projected Cash Flow Analysis of the Debtor's income, expenses and Plan payments is attached as Exhibit "A". The Debtor has been receiving monthly support for her spouse in the sum of $4,800.00. For budgeting purposes, the Debtor anticipates that this support will continue through 2019. An analysis of the cash flow since the filing of this case is attached as Exhibit "B".

## V. SUMMARY OF THE PLAN

### 5.1 Introduction

The Plan requires the Debtor to pay monthly payments to the Allowed Claims. The length of the Plan is 60 months with the first payment beginning on the Effective Date.

The following is a brief summary of some of the principal elements of the Plan. This is a summary only and you are urged to review the Plan itself in detail since it is the Plan and not this summary which will be considered and may be confirmed by the Court at the confirmation hearing.

### 5.2 Treatment of Claims

#### 5.2.1 Unclassified Claims (Administrative Expense Claims)

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. The Debtor believes the only Administrative Expense Claims will be those of her attorneys, Riggs Abney Neal Turpen Orbison & Lewis ("Riggs Abney") and the Office of the United States Trustee. As such, the Debtor has not placed the following Claims in any Class.

Administrative Expense Claims of this estate shall be paid in full as follows:

4

At this time the only Administrative Expense Claims of professionals retained by the Debtor will be the Administrative Expense Claim of the Debtor's legal counsel – Riggs Abney. The amount of the Administrative Expense Claim of Riggs Abney as counsel for the Debtor will be approximately $30,000.00 at confirmation. After reduction for the funds held in trust in the sum of $9,833.00, the amount to be paid is estimated to be in the sum of $20,167.00. Payment of any approved Administrative Expense Claim of Riggs Abney will be paid on the Effective Date, or within thirty (30) days after approval.

Riggs Abney consents to this treatment.

The Office of the United States Trustee incurs an Administrative Expense Claim in the form of a quarterly fee based upon the amount of disbursements made by the Debtor. Any unpaid United States Trustee Fee shall be paid on the Effective Date. Furthermore, the quarterly fee owed to the United States Trustee shall be paid until the Case is closed.

Although the Debtor does not anticipate any other Administrative Expense Claims. Any other Administrative Expense Claims incurred pursuant to 11 U.S.C. Section 503 shall be paid upon the allowance of the Administrative Expense Claim. The bar date to file an Administrative Expense Claim is 30 days after the Effective Date.

### 5.2.2   Class No. 1 Secured Claim of Bank of New York Mellon Trust Company

Bank of New York Mellon Trust Company ("Bank of New York") possesses a Note and Mortgage recorded March 11, 2005 in the offices of the Wagoner County Clerk on real property described as follows:

> West Fifty (50) feet of Lot Five (5) and the East Twenty-five (25) feet of Lot Four (4), Block Three Hundred Seventy-Eight (378), City of Wagoner, Wagoner County, State of Oklahoma, according to the recorded Plat thereof, aka 606 SW 3rd Street, Wagoner, Oklahoma.

The Proof of Claim filed by Bank of New York on October 23, 2018 sets forth that the amount of its Claim is $55,596.27. The arrearage is $6,500.00.

The amount of Bank of New York's Allowed Secured Claim as of July 23, 2018 was $55,695.27. This Allowed Secured Claim shall be satisfied by continued monthly payments of $355.20 made by the Debtor to Bank of New York until paid in full as required by the Home Affordable Modification Agreement and Mortgage. The Debtor's payments shall begin on the Effective Date of the Plan.

As of July 23, 2018, the arrearage was $3,396.41. By the time the Plan will be confirmed or authority is given to make adequate protection payments, the Debtor will be an additional eight (8) months in arrears in her payments to Bank of New York. The amount of arrearage is projected to be $6,600.00 at confirmation. This Arrearage Claim shall be satisfied by 60 monthly payments of $110.00 beginning on the Effective Date of the Plan.

5

Bank of New York shall retain its lien on the above-described property.

This is an Impaired Class.

### 5.2.3 Class No. 2 Secured Claim of NewRez, LLC

NewRez, LLC ("NewRez") is the transferee of Claim No. 17 (Ditech Financial, LLC). As such, NewRez possesses a Note and Mortgage dated March 9, 2015. The Mortgage was recorded in the offices of the Wagoner County Clerk on real property described as follows:

> Lots Thirty-six (36), and Fifty-three (53), Block Two (2), Wise Subdivision, Wagoner County, State of Oklahoma, according to the recorded Plat thereof, aka 31258 E. 680 Road, Wagoner, Oklahoma.

The Proof of Claim filed by Ditech Financial, LLC on November 21, 2018 sets forth that the amount of the claim is $34,647.48. Pursuant to the Agreed Order Terminating Stay, the arrearage is $2,202.18.

The amount of NewRez's Allowed Secured Claim as of July 23, 2018 was $23,647.18. This Allowed Secured Claim shall be satisfied by continued monthly payments of $266.65 made by the Debtor to NewRez until paid in full as required by the Note and Mortgage. The Debtor's payments shall begin on the Effective Date of the Plan.

The Debtor has been paying the arrearage claim pursuant to the Agreed Order Terminating Stay via monthly payments of $337.20. The arrearage claim will be satisfied by continued monthly payments of $337.20 through May 2019.

NewRez shall retain its lien on the above-described property.

This is an Impaired Class.

### 5.2.4 Class No. 3 Secured Claim of Specialized Loan Servicing, LLC

Specialized Loan Servicing, LLC ("Specialized Loan") is the transferee of Claim No. 16 (Wells Fargo). As such Specialized Loan possesses a Note and Mortgage dated June 5, 2005. The Mortgage was recorded June 14, 2005 in the offices of the Okmulgee County Clerk on real property described as follows:

> The West Eight (8) feet of Lot Seven (7), and all of Lots Eight (8), Nine (9), and Ten (10), Block Twelve (12), Golden Hill addition to the City of Okmulgee, Okmulgee County, State of Oklahoma, according to the recorded Plat thereof, aka 1506 E. 3rd Street, Okmulgee, Oklahoma.

The Proof of Claim filed by Wells Fargo on November 21, 2018 sets forth that the amount of its Claim is $33,837.53. The arrearage is $5,956.17.

The amount of Specialized Loan's Allowed Secured Claim as of July 23, 2018 was $33,837.53.

This Allowed Secured Claim shall be satisfied by continued monthly payments of $304.33 made by the Debtor to Specialized Loan until paid in full as required by the Note and Mortgage. The Debtor's payments shall begin on the Effective Date of the Plan.

As of July 23, 2018, the arrearage was $5,976.17. By the time the Plan will be confirmed or authority is given to make adequate protection payments, the Debtor will be an additional eight (8) months in arrears in her payments to Specialized Loan. The amount of the total arrearage is projected to be $8,520.00. This Arrearage Claim shall be satisfied by 60 monthly payments of $142.00 beginning on the Effective Date of the Plan.

Specialized Loan shall retain its lien on the above-described property.

This is an Impaired Class.

### 5.2.5 Class No. 4 Secured Claim of U.S. Bank Trust National Association as Trustee of Chalet Series III Trust

U.S. Bank Trust National Association as Trustee of Chalet Series III Trust ("U.S. Bank") is the transferee of Claim No. 9 (Federal National Mortgage Association). As such, U.S. Bank possesses a Note and Mortgage dated March 9, 2015. The Mortgage was recorded July 22, 2003 in the offices of the Creek County Clerk on real property described as follows:

> Lot Eight (8), and Nine (9), less and except the East Thirty (30) feet of Lot Eight (8), in Block Twelve (12), Highlands Addition to the Town of Mounds, Creek County, State of Oklahoma, according to the recorded Plat thereof., aka 224 E. 16th Street, Mounds, Oklahoma.

The Proof of Claim filed by Fannie Mae on September 28, 2018 sets forth that the amount of its Claim is $55,936.66. The arrearage is $6,326.42.

The amount of U.S. Bank's Allowed Secured Claim as of July 23, 2018 was $55,936.66. This Allowed Secured Claim shall be satisfied by continued monthly payments of $595.43 made by the Debtor to Fannie Mae until paid in full as required by the Note and Mortgage. The Debtor's payments shall begin on the Effective Date of the Plan.

As of July 23, 2018, the arrearage was $6,326.42. By the time the Plan will be confirmed or authority is given to make adequate protection payments, the Debtor will be an additional eight (8) months in arrears in her payments to U.S. Bank. The amount of the total arrearage is projected to be $11,090.40. This Arrearage Claim shall be satisfied by 60 monthly payments of $184.94 beginning on the Effective Date of the Plan.

U.S. Bank shall retain its lien on the above-described property.

This is an Impaired Class.

### 5.2.6 Class No. 5 Secured Claim of First State Bank of Tahlequah

First State Bank of Tahlequah ("First State Bank") possesses a Note and Mortgage dated June

7

1, 2009. The Mortgage was recorded June 5, 2009 in the offices of the Muskogee County Clerk on real property described as follows:

> A part of Lot 8 in Block 8 in the City of Muskogee, Muskogee County, State of Oklahoma, more particularly described as follows: Beginning at a point on the East line of said Lot 8, 77 feet Southerly from the Northeast corner of said Lot; thence Southerly along the East line of said Lot a distance of 51.7 feet; thence Westerly along the South line of said Lot a distance of 100 feet to a point on the East line of a 14 foot alley; thence Northerly along the East line of said alley a distance of 48.7 feet; thence Easterly on a line parallel with and 77 feet South of the North line of said Lot and along the South line of a 5-1/2 foot walkway (formerly a part of the 11 foot alley) a distance of 100 feet to the point of beginning.
>
> AND
>
> That part of a 14 foot alley, between Court Street and Wall Street, which was formerly a part of Lot 8, in Block 8, more particularly described as follows: Beginning at a point on the South line of said Lot, 61 feet East from the Southwest corner of said Lot 8; thence Easterly, a distance of 7 feet on said line, parallel with the South line of said Lot 8; thence Northerly a distance of 48.7 feet on a line parallel with the Easterly line of said Lot 8; thence Westerly on a line parallel with the North line of said Lot a distance of 7 feet; thence Southerly on a line parallel with the Easterly line of said Lot a distance of 48.7 feet to the point of beginning.
>
> AND
>
> A part of Lot 8 in Block 8 in the City of Muskogee, more particularly described as follows: Beginning at a point on the East line of said Lot 8, 77 feet Southerly from the Northeast corner of said Lot; thence Northerly along the East line of said Lot 8 a distance of 5-1/2 feet; thence Westerly parallel to the North line of said Lot a distance of 100 feet to a point on the East line of a 14 foot alley; thence Southerly along the East line of said alley a distance of 5-1/2 feet; thence Easterly on a line parallel with and 77 feet South of the North line of said Lot and along the South line of an 11 foot alleyway a distance of 100 feet to the point of beginning, a/k/a 221 North 3rd Street, Muskogee, Oklahoma, aka 221 N. 3rd Street, Muskogee, Oklahoma ("Doyle Bland Building").

The Proof of Claim filed by First State Bank on November 25, 2018 sets forth that the amount of its Claim is $967,529.00.

The amount of First State Bank's Allowed Secured Claim as of July 23, 2018 was $967,529.00. This Allowed Secured Claim shall be satisfied by continued monthly payments of $6,564.56 made by

the Debtor to First State Bank until paid in full as required by the Note and Mortgage. The Debtor's payments shall begin on the Effective Date of the Plan.

By the time the Plan will be confirmed or authority is given to make adequate protection payments, the projected amount of the arrearage will be $55,000.00. This Arrearage Claim shall be satisfied by 60 monthly payments of $916.00 beginning on the Effective Date of the Plan.

First State Bank shall retain its lien on the above-described property.

This is an Impaired Class.

### 5.2.7  Class No. 6 Secured Claim of U.S. Bank National Association

U.S. Bank National Association ("US Bank") possesses a Note and Mortgage dated October 8, 2008. The Mortgage was recorded on October 20, 2008 in the offices of the Muskogee County Clerk on real property described as follows:

> Shadow Wood Mall: The Easterly 75 feet of Lot 1 in Block 9 in the City of Muskogee, according to the recorded Plat thereof, Muskogee County, Oklahoma, aka 401 W. Broadway Street, Muskogee, Oklahoma.

The Proof of Claim filed by U.S. Bank on November 13, 2018 sets forth that the amount of its Claim is $225,994.71. The Debtor has been paying adequate protection payments each month in the sum of $819.49 to US Bank. These payments shall continue until the Effective Date.

The amount of U.S. Bank's Allowed Secured Claim as of July 23, 2018 was $225,994.71. This Allowed Secured Claim shall be satisfied in monthly payments amortized over 120 months at 6% interest. The monthly payment shall be $1,620.00 and payments shall begin on the Effective Date.

US Bank shall retain its lien on the above-described property.

This is an Impaired Class

### 5.2.8  Class No. 7 Secured Claim of the City of Muskogee

The City of Muskogee ("Muskogee") filed a Notice of Dilapidation and Lien on August 8, 2016 in the offices of the Muskogee County Clerk on real property described as follows:

> All of Lot Ten (10) and the Southerly Twenty-Five (25) feet of Lot Nine (9), all in Block Fifteen (15) in the City of Muskogee, Muskogee County, State of Oklahoma, more particularly described as follows: Beginning at the Southwest corner of said Lot Nine (9) and running thence Northeasterly along the East line of Main Street, a distance of 25 feet; thence Southeasterly in a direct line parallel with the Southerly line of said Lot Nine (9) a distance of 171 feet more or less to the right

9

of way of the Missouri, Kansas & Texas Railroad; thence Southwesterly a distance of 25 feet on the boundary line of said right of way to the Southeast corner of said Lot Nine (9); thence northwesterly along the Southerly line of said Lot Nine (9) to the Pont of Beginning, Muskogee County, State of Oklahoma.

The claim will be satisfied in full by either surrender of the property or a sale.

This is an Impaired Class

### 5.2.9 Class No. 8 Secured Claim of Terry Burnett Trust, Michael G. Davis and Annette E. Davis

The Terry Burnett Trust, Michael G. Davis and Annette E. Davis ("Burnett Trust") possess a Note and Mortgage. The Mortgage was recorded June 30, 2009 in the offices of the Muskogee County Clerk on real property described as follows:

> Indian Springs Executive Center: A tract of land in Lot 10 of Harvison Subdivision to the City of Muskogee, State of Oklahoma, more particularly described as follows: Beginning at a point of 60.0' South and 25.0' East of the Northwest corner of said Lot 10; thence East of the Northwest corner of said Lot 10; thence East along a line parallel to the North line of said Lot 10, a distance of 300.00'; thence South along a line parallel to the West line of said Lot 10, a distance of 200.0'; thence West along a line parallel to the North line of said Lot 10, a distance of 300.0'; thence North along a line parallel to the West line of said Lot 10, a distance of 200.0' to the point of beginning, being platted out of a part of the NW 1/4 of the NW 1/4 and part of the W 1/2 of the SW 1/4 of the NW 1/4 and a part of the N 1/2 of the NE 1/4 of the SW 1/4 of the NW 1/4 and a part of the SW 1/4 of the NE 1/4 of the SW 1/4 of the NW 1/4 of Section 24, Township 15 North, Range 18 East of the Indian Base and Meridian, Muskogee County, Oklahoma.

The Proof of Claim filed by the Burnett Trust on September 12, 2018 sets forth that the amount of its Claim is $258,874.67.

The Burnett Trust has agreed to an allowed claim in the amount of $128,874.55. This claim shall be satisfied in full via the sale of the property. Once the Burnett Trust has been paid the sum of $128,874.55, the Note shall be paid in full and it will release the Mortgage.

This is an Impaired Class

### 5.2.10 Class No. 9 Secured Claim of Finesse Construction, LLC

Finesse Construction, LLC ("Finesse") filed a Statement of Judgment in the offices of the Okmulgee County Clerk on September 29, 2017 in the offices of the Wagoner County Clerk, on May

10

22, 2017 in the offices of the Muskogee County Clerk, on May 22, 2017 and on May 22, 2017 in the offices of the Creek County Clerk. The Statement of Judgment encumbers all of the Debtor's real property.

The Proof of Claim filed by Finesse Construction on July 31, 2018 sets forth that the amount of its Claim is $61,964.61.

Finesse Construction has agreed to an allowed claim in the sum $46,843.82. This amount will be satisfied in full via the sale of the Mill property. Upon satisfaction, Finesse Construction will release the Statements of Judgment in Wagoner, Muskogee, Okmulgee and Creek Counties.

This is an Impaired Class

### 5.2.11 Class No. 10 Secured Claim of Muskogee County Treasurer

The Muskogee County Treasurer filed Claim No. 7 on September 5, 2018 as a secured claim in the sum of $15,525.00. As of February 15, 2019, Muskogee County asserts a claim in and to the following assets in the following amounts:

221 North 3rd, Muskogee, Oklahoma (Doyle Bland Building): $16,400.86
1320 North Mill, Muskogee, Oklahoma (Indian Springs Executive Center): $4,277.94
Three Rivers Personal Property: $797.61

This claim will be satisfied as follows: The sum of $4,277.94 will be paid at closing of the sale of the Indian Springs Executive Center. The sum of $797.61 shall be paid in full at closing of the Three Rivers Pizza. The remaining allowed secured claim in the sum of $16,400.86 on the Doyle Bland Building will be paid with interest at 5% per annum amortized over 60 months in the amount of $309.50. The payments shall begin on the Effective Date and continuing each month thereafter until paid in full.

The Muskogee County Treasurer shall retain its liens on its collateral.

This class is impaired.

### 5.2.12 Class No. 11 Priority Claim of the Internal Revenue Service

The Internal Revenue Service filed Claim No. 2 on July 30, 2018 in the amount of $13,030.59 seeking a Priority Claim in the amount of $12,029.65 and a General Unsecured Claim in the amount of $1,000.94. The Priority Claim includes $10,897.69 for estimated taxes due for unfiled FICA returns for 2016-2018.

The Debtor has completed all required returns.

The Allowed Priority Claim shall be $3,502.34. The Debtor shall pay this Allowed Priority Claim in full on the Effective Date.

This Class is not Impaired.

11

### 5.2.13 Class No. 12 Priority Claim of the Oklahoma Tax Commission

The Oklahoma Tax Commission filed Claim No. 10 on October 1, 2018 as a priority claim in the amount of $473.48 and as a general unsecured claim of $23.50. The priority claim is filed as estimated taxes due from sales tax for May and June 2018.

The Debtor shall pay this Allowed Priority Claim in full on the Effective Date.

This class is not impaired.

### 5.2.14 Class No. 13 Unsecured Claims

All other creditors not set forth and classified above are deemed General Unsecured Creditors. The Allowed General Unsecured Creditors that filed Claims total $32,606.05.

The Allowed General Unsecured Claims shall be paid $8,152.00 on a pro-rata basis on the Effective Date, $8,152.00 on a pro-rata basis three (3) months after the Effective date, $8,152.00 on a pro-rata basis six (6) months after the Effective Date and $8,275.77 on a pro-rata basis nine (9) months after the Effective Date. The Debtor estimates each Allowed General Unsecured Claim will receive a distribution of 100%.

A schedule of the Allowed General Unsecured Claims and each creditor's monthly payment is set forth in the attached Exhibit "C".

This is an Impaired Class.

### 5.2.7 Means for Execution of the Plan.

Except as otherwise provided in the Plan, on the Effective Date all of the Debtor's assets shall vest in the Debtor free and clear of all liens, claims, encumbrances and interests, but subject to the rights of holders of Allowed Claims to obtain distributions provided in the Plan. The Debtor shall administer her business and property from and after the Effective Date.

The Debtor shall be responsible: (a) for making the distributions in accordance with the Plan; and (b) for her affairs from and after the Effective Date.

From and after the Effective Date, the Debtor may retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as she deems appropriate, and compensate such professionals without prior approval of the Bankruptcy Court. However, all parties seeking payment or reimbursement of attorneys', accountant, or other professionals' fees incurred from and after the Petition Date through the Effective Date, pursuant to any provision of the Bankruptcy Code or the Plan, must obtain approval of the Bankruptcy Court for such payment pursuant to a motion or application for such payment filed not later than 30 days after the Effective Date.

### 5.2.8 Distribution of Property Under the Plan.

The Debtor shall make all distributions under the Plan. The Debtor shall have the authority

12

to make such interim distributions as she may determine to be appropriate pending a final distribution. The Debtor may make prepayment of any Claim without penalty. The Debtor shall hold sufficient funds in reserve for distribution to holders of Claims to which an objection has been filed.

### 5.2.9 Delivery of Distributions.

Distributions to holders of Allowed Claims shall be distributed by mail as follows: (a) at the addresses set forth on the respective proofs of claim filed by such claimant; (b) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of claim; or (c) at the address reflected on the Debtor's Schedules of Assets and Liabilities if no proof of claim is filed and the Debtor has not received a written notice of change of address.

## VI. EFFECT OF CONFIRMATION AND DISCHARGE

The provisions of the Debtor's Plan, if confirmed, shall bind the Debtor and all creditors, regardless of whether creditors are Impaired under or voted for the Plan.

Confirmation of the Plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all of the payments (except on modified mortgages) under the Plan, or as otherwise provided in 11 U.S.C. Section 1141(d)(5). Payments on mortgages modified by the Plan shall not be considered "payments under" the Plan for purposes of this paragraph or 11 U.S.C. Section 1141(d)(5)(A), and the non-completion of payments on those mortgages shall not prevent the Debtor from receiving a discharge upon her completion of all other payments required by this Plan.

**The Debtor shall seek closing of this Case before the entry of her discharge. The Debtor anticipates seeking the closure of this Case after payments have begun to creditors, resolution of any Claim objections, and allowance of professional fees in which the Debtor believes the Case shall be fully administered under Bankruptcy Rule 3022. Furthermore, The Debtor will seek to have this Case re-opened (after paying the appropriate fee to re-open) approximately 60 months after the first payment is made under the Plan for purposes of this Court entering a discharge of her debts.**

## VII. ALTERNATIVES TO THE PLAN

There are three general alternatives if the Plan is not confirmed: (A) presentation of alternative plans, (B) conversion to Chapter 7, and (C) dismissal of the Case. Each of the alternatives are discussed below.

7.1 <u>Alternative Plans.</u> Any creditor or party in interest can file and present a plan if confirmation of the Plan is denied. The Debtor has no information concerning whether any other plan may be proposed. Furthermore, since any plan would require the submission of the future earnings of the Debtor, it is more likely that this Case would be dismissed or converted to a Chapter 7.

7.2 <u>Conversion to Chapter 7.</u> Chapter 7 of the Bankruptcy Code requires expeditious liquidation of the assets of Chapter 7 debtors and distribution of the assets to creditors in the order

13

Case 18-80810    Doc 145    Filed 03/05/19    Entered 03/05/19 11:04:48    Desc Main
Document      Page 13 of 20

of statutorily mandated priorities. Creditors with Allowed Secured Claims are entitled to receive the collateral securing their Claims or the amount of their Claims, including pre- and post-petition interest and fees and costs provided by their contract, not to exceed the value of their collateral, before creditors holding Unsecured Claims receive their share of the remaining estate, if any. Conversion to Chapter 7 would also mandate the appointment of a trustee. The trustee could, and does retain other professionals, resulting in additional Administrative Expenses. All approved expenses of the trustee and retained professionals would be entitled to payment before any remaining assets could be distributed to creditors holding Unsecured Claims.

As reflected in the liquidation analysis in the attached Exhibit "D", the Debtor believes that no distribution would be made to the Allowed Unsecured Creditors. The Debtor believes confirmation of the Plan is in the best interest of all creditors.

7.3     Dismissal of the Case. A third alternative to confirmation of the Plan is dismissal of the Debtor's case. Upon dismissal of the Case, those creditors whose rights that have been stayed by the filing of the Case would be free to pursue their non-bankruptcy remedies. This simply creates a race to the courthouse and the Debtor's assets. The Debtor is confident the vast majority of creditors would receive substantially less in the event of a dismissal of this Case than they would under the Plan.

7.4     Risk Factors. To make payments under this Plan, the Debtor must continue operate her business.

## VIII.  PENDING LITIGATION

There were pending litigation matters when this case was filed, as follows: *Terry Burnett Trust et al., v. Hunter*, Case No. CJ-2017-286, Muskogee County, Oklahoma; *Ditech Financial, LLC v. Hunter*, Case No. CJ-2017-332, Wagoner County, Oklahoma; *Wells Fargo Bank v. Hunter*, Case No. CJ-2018-65, Okmulgee County, Oklahoma and *Federal National Mortgage Association v. Hunter*, Case No. CJ-2016-316, Creek County, Oklahoma. In all of these cases, the plaintiffs were seeking a judgment in foreclosure; however, this Case was filed before the sheriff's sales were held. The liens and interests of these plaintiffs are treated in the Plan. No additional litigation is anticipated with any of these matters.

No significant litigation, contested matters, or adversary proceedings are pending or were pending in this Case or in any other court. Furthermore, the Debtor knows of no other possible litigation such as the avoidance of a preferential transfer or fraudulent conveyance.

## IX.  TRANSACTIONS WITH INSIDERS AND PROFESSIONALS

There are no transactions with insiders of the Debtor.

The Debtor retained legal counsel (Riggs Abney Neal Turpen Orbison & Lewis) for representation in this bankruptcy proceeding. No other professionals have been retained.

## X.  EXECUTORY CONTRACTS

The Debtor's commercial and residential rental agreements are primarily month to month. The only executory contract of which the Debtor is aware is with Alan Investments, III, LLC. The

14

contract is a residential lease/purchase for the Debtor's home. The Debtor assumes this executory contract.

The Debtor knows of no Executory Contracts at this time. If Executory Contracts exist, the Debtor rejects those Executory Contracts. The other party to an Executory Contract that has been rejected may file a proof of claim for damages by reason of the rejection. Proofs of claim for rejection damages must be filed within 30 days of the Effective Date. A Claim resulting from rejection of an Executory Contract shall constitute a Class 13 Claim to the extent it is allowed by the Bankruptcy Court.

## XI. MISCELLANEOUS

11.1    NO REPRESENTATIONS ABOUT THE DEBTOR, PARTICULARLY ABOUT THE DEBTOR'S FUTURE EARNING POTENTIAL ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCMENTS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY ANY CREDITOR. ANY ADDITIONAL REPRESENTATION OR INDUCEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR OR TO THE UNITED STATES TRUSTEE WHO, IN TURN, SHALL DELIVER THE INFORMATION TO THE BANKRUPTCY COURT OR TAKE OTHER APPROPRIATE ACTION.

11.2    THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ABSOLUTE ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS COMPLETE AND ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO PRESENT COMPLETE AND ACCURATE INFORMATION. THE RECORDS KEPT BY THE DEBTOR RELY FOR THEIR ACCURACY ON INTERNAL BOOKKEEPING. THE RECORDS KEPT BY THE DEBTOR ARE NOT WARRENTED OR REPRESENTED TO BE FREE FROM ANY INACCURACY. HOWEVER, EVERY REASONABLE EFFORT HAS BEEN MADE TO PRESENT ACCUARATE INFORMATION. COUNSEL TO THE DEBTOR HAS NOT INDEPENDENTLY VERIFIED ANY OF THE INFORMATION PROVIDED BY THE DEBTOR AND DOES NOT MAKE ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE TRUTH OR ACCURACY OF ANY OF THE INFORMATION PRESENTED.

11.3    ALL PARTIES ENTITLED TO VOTE ON THE PLAN ARE URGED TO REVIEW IN FULL THE PLAN AND THIS DISCLOSURE STATEMENT TOGETHER WITH ALL EXHIBITS ATTACHED THERETO, PRIOR TO VOTING ON THE PLAN, AND MAY DESIRE TO CONSULT LEGAL COUNSEL PRIOR TO VOTING TO ENSURE COMPLETE UNDERSTANDING OF THEIR TREATMENT UNDER THE PLAN. THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS OF THE DEBTOR TO ENABLE THEM TO MAKE INFORMED DECISIONS ABOUT THE PLAN.

11.4 EACH CREDITOR IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO IT UNDER FEDERAL AND APPLICABLE STATE, LOCAL, AND FOREIGN TAX LAWS. THE DEBTOR MAKES NO WARRANTIES OR REPESENTATIONS REGARDING THE TAX IMPACT OF THE PLAN ON ANY CREDITOR.

The statements contained in this Disclosure Statement are made as of March 5, 2019 unless otherwise indicated. The information contained in this Disclosure Statement may be rendered inaccurate by events occurring after its date.

RIGGS, ABNEY, NEAL, TURPEN, ORBISON & LEWIS


s/ Karen Carden Walsh
Karen Carden Walsh, OBA #14690
502 W. 6th Street
Tulsa, Oklahoma 74119
(918) 587-3161
(918) 587-9708 (fax)
kwalsh@riggsabney.com

Attorneys for the Debtor

# Exhibit A
## Projected Cash Flow Analysis

| | June 2019 | July-December 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | |
| Family Support | $4,800.00 | $28,800.00 | | | | | |
| Rent – 606 SW 3rd Street, Wagoner | $780.00 | $4,610.00 | $9,360.00 | $9,360.00 | $9,360.00 | $9,360.00 | $9,360.00 |
| Rent- 31258 E. 682 Road, Wagoner | $500.00 | $3,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 |
| Rent – 1506 E. 3rd, Okmulgee | $650.00 | $3,900.00 | $7,800.00 | $7,800.00 | $7,800.00 | $7,800.00 | $7,800.00 |
| Rent - 224 E. 16th Street, Mounds | $950.00 | $5,700.00 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 |
| Rent – Doyle Bland | $13,557.00 | $81,342.00 | $162,684.00 | $162,684.00 | $162,684.00 | $162,684.00 | $1,62.684.00 |
| Rent – Shadow Wood | $4,822.50 | $28,932.00 | $57,870.00 | $57,870.00 | $162,684.00 | $162,684.00 | $162,684.00 |
| Lease – Restaurant Equipment | $250.00 | $1,500.00 | $1,750.00 | $1,750.00 | $1,750.00 | $1,750.00 | $500.00 |
| **Accumulated Cash** | $50,000.00 | | | | | | |
| **Totals:** | $76.309.50 | $157,784.00 | $256,864.00 | $256,864.00 | $256,864.00 | $256,864.00 | $255,614.00 |
| **Expenses** | | | | | | | |
| Rent | $750.00 | $4,500.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 |
| Food/Household | $450.00 | $2,700.00 | $5,400.00 | $5,400.00 | $5,400.00 | $5,400.00 | $5,400.00 |
| Utilities | $250.00 | $1,500.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| Transportation | $300.00 | $1,800.00 | $3,600.00 | $3,600.00 | $3,600.00 | $3,600.00 | $3,600.00 |
| Bank of New York, 606 SW 3rd | $355.20 | $2,136.20 | $4,260.40 | $4,260.40 | $4,260.40 | $4,260.40 | $4,260.40 |
| Bank of New York, 606 SW 3rd | $110.00 | $660.00 | $1,320.00 | $1,320.00 | $1,320.00 | $1,320.00 | $550.00 |
| 606 SW 3rd Maintenance | $100.00 | $600.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 |
| New Rez, 31628 E. 682 Road | $266.65 | $1,591.90 | $3,199.80 | $3,199.80 | $3,199..80 | $3,199.80 | $3,199.80 |
| 31628 E. 682 Road Maintenance | $100.00 | $600.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 |
| Specialized Loan, 1506 E. 3rd | $304.33 | $1,825.28 | $3,651.96 | $3,651.96 | $3,651.96 | $3,651.96 | $3,651.96 |
| Specialized Loan, 1506 E. 3rd | $142.00 | $852.00 | $1,704.00 | $1,704.00 | $1,704.00 | $1,704.00 | $710.00 |
| 1506 E. 3rd Repairs and Maintenance | $100.00 | $600.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 |
| U.S. Bank, 224 E. 16th Street | $594.93 | $3,569.58 | $7,139.16 | $7,139.16 | $7,139.16 | $7,139.17 | $7,139.16 |
| U.S. Bank, 224 E. 16th Street | $184.94 | $1,109.64 | $2,219.28 | $2,219.28 | $2,129.28 | $2,129.28 | $924.70 |
| 224 E. 16th Maintenance | $100.00 | $700.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 |
| First State Bank, Doyle Bland | $6,564.56 | $39,387.36 | $78,774.58 | $78,774.58 | $78,774.58 | $78,774.58 | $78,774.58 |
| First State Bank, Doyle Bland | $916.00 | $5,496.00 | $10,992.00 | $10,992.00 | $10,992.00 | $10,992.00 | $4,580.00 |
| Doyle Bland Utilities | $2,500.00 | $15,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| Doyle Bland Insurance | $290.00 | $1,740.00 | $2,420.00 | $2,420.00 | $2,420.00 | $2,420.00 | $2,420.00 |
| Doyle Bland Taxes | $2,400.00 | $2,400.00 | $4,800.00 | $4,800.00 | $4800.00 | $4,800.00 | $4,800.00 |
| Doyle Bland Maintenance and Repairs | $400.00 | $2,400.00 | $3,480.00 | $3,480.00 | $3,480.00 | $3,480.00 | $3,480.00 |
| US Bank, Shadow Wood | $1,620.00 | $9,720.00 | $19,440.00 | $19,440.00 | $19,440.00 | $19,440.00 | $19,440.00 |
| Shadow Wood Mall Insurance | $290.00 | $1,740.00 | $3,480.00 | $3,480.00 | $3,480.00 | $3,480.00 | $3,480.00 |
| Shadow Wood Mall Utilities | $2,500.00 | $15,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| Shadow Wood Mall Maintenance | $300.00 | $1,800.00 | $3,600.00 | $3,600.00 | $3,600.00 | $3,600.00 | $3,600.00 |
| Shadow Wood Mall Taxes | $1,134.00 | $1,134.00 | $2,268.00 | $2,268.00 | $2,268.00 | $2,268.00 | $2,268.00 |
| Muskogee County Treasurer | $309.50 | $1,857.00 | $3,714.00 | $3,714.00 | $3,714.00 | $3,714.00 | $1,547.50 |
| IRS | $3,502.34 | | | | | | |
| OTC | $473.48 | | | | | | |
| Unsecured Creditors | $8,152.00 | $16,304.00 | $8,275.77 | | | | |
| US Trustee | $350.00 | | | | | | |
| Attorney Fees | $20,167.00 | | | | | | |
| **Totals:** | $55,976.93 | $138,722.96 | $250,538.95 | $242,963.18 | $242,264.17 | $242,264.17 | $230,626.10 |

**Exhibit B**
**Historical Cash Flow Analysis**

|          | August 2018 | September 2018 | October 2018 | November 2018 | December 2018 | January 2019 |
|----------|-------------|----------------|--------------|---------------|---------------|--------------|
| Income   | $21,535.00  | $23,076.00     | $20.976.23   | $20,408.56    | $23,825.16    | $38,152.25   |
|          |             |                |              |               |               |              |
| Expenses | $19,636.00  | $20,547.00     | $18,856.56   | $16,255.66    | $9,721.06     | $14,536.88   |

## Exhibit C
## General Unsecured Claims

| Name of Creditor | Claim No. | Claim Amount | Payment (month 1) | Payment (month 3) | Payment (month 6) | Payment (month 9) | Amount Paid under Plan |
|---|---|---|---|---|---|---|---|
| Discover Bank | Claim No. 1 | $9,605.81 | $2,401.45 | $2,401.45 | $2,401.45 | $2,400.75 | $9,605.81 |
| Internal Revenue Service | Claim No. 2 | $1,000.94 | $250.23 | $250.23 | $250.23 | $250.25 | $1,000.94 |
| American Express National Bank | Claim No. 4 | $1,397.74 | $349.44 | $349.44 | $349.44 | $349.42 | $1,397.74 |
| Snowden Engineering | Claim No. 5 | $850.00 | $212.50 | $212.50 | $212.50 | $212.50 | $850.00 |
| Capital One Bank | Claim No. 6 | $600.44 | $150.11 | $150.11 | $150.11 | $150.11 | $600.44 |
| Muskogee County Treasurer | Claim No. 7 | $2,527.43 | $564.35 | $564.35 | $564.35 | $834.38 | $2,527.43 |
| Oklahoma Tax Commission | Claim No. 10 | $23.50 | $23.50 | | | | $23.50 |
| LVNV Funding, LLC | Clam No. 11 | $515.75 | $128.93 | $128.93 | $128.93 | $257.89 | $515.75 |
| Bank of America | Claim No. 12 | $1,276.20 | $319.05 | $319.05 | $319.05 | $319.05 | $1,276.20 |
| Bank of America | Claim No. 13 | $629.66 | $157.41 | $157.41 | $157.41 | $154.43 | $629.66 |
| Schindler Elevator Corporation | Claim No. 20 | $14,178.58 | $3,595.03 | $3,618.53 | $3,618.53 | $3,346.49 | $14,178.58 |
| Totals: | | $32,606.05 | $8,152.00 | $8,152.00 | $8,152.00 | $8,275.77 | $32,606.05 |

# Exhibit D
## Liquidation Analysis

| Asset Description | Scheduled Value | Liquidation Value | Exemption | Secured Claim |
|---|---|---|---|---|
| Indian Springs Executive Center, 1320 North Mill | $350,000.00 | $210,000.00 | No | Yes |
| Shadow Wood Mall, 401 West Broadway | $400,000.00 | $100,000.00 | No | Yes |
| Doyle Bland, 221 North 3rd | $1,500,000.00 | 1,000,000.00 | | |
| Royal Casket, 300 North Main | $50,000.00 | $00.00 | No | Yes |
| 1506 East 3rd, Okmulgee | $45,000.00 | $20,000.00 | No | Yes |
| 224 East 16th, Mounds | $75,000.00 | $20,000.00 | No | Yes |
| 31258 East 682 Road, Wagoner | $35,000.00 | $30,000.00 | No | Yes |
| 606 SW 3rd, Wagoner | $75,000.00 | $35,000.00 | No | Yes |
| 2003 Chevrolet Ventura | $1,500.00 | $1,500.00 | Yes | No |
| Household items, Clothing, Jewelry | $5,600.00 | $5,600.00 | Yes | No |
| 2 Dogs | $00.00 | $00.00 | No | No |
| Cash and Bank Accounts | $00.00 | $00.00 | Yes | No |
| Surety Bonds | $60,000.00 | $00.00 | No | No |
| Children's Discovery Center of Muskogee, Inc. | $00.00 | $00.00 | No | No |
| Back Rental Payments | $317,916.00 | $00.00 | No | No |
| Restaurant Equipment | $12,100.00 | $15,000.00 | Yes | Yes |
| Food Supplies | $1,000.00 | $00.00 | No | No |

Value of Non Exempt Assets: $1,420,000.00

Reduction for Secured Claims: $1,769,905.80

Equity: -$349,904.20