IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE: )
)
JEANNETTE LEANN HUNTER, ) Case No. 18-80810
) Chapter 11
)
Debtor-In-Possession. )

# PLAN OF REORGANIZATION

RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS

Karen Carden Walsh, OBA #14690
502 West 6th Street
Tulsa, Oklahoma 74119-1010
(918) 587-3161
(918) 587-9708 (fax)

Dated: March 5, 2019

Attorneys for Debtor-In-Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE: )
)
JEANETTE LEANN HUNTER, ) Case No. 18-80810
) Chapter 11
)
Debtor-In-Possession. )

## PLAN OF REORGANIZATION

The Debtor-In-Possession, Jeanette Leann Hunter (the "Debtor"), proposes her Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

For the purpose of this Plan, the following terms shall have the meaning set forth below unless the context clearly requires otherwise:

1.1 Administrative Expense: An Allowed Claim for an expense of the administration of this Chapter 11 case under Sections 503(b) and 507(a) of the Bankruptcy Code which has been approved by Final Order of the Bankruptcy Court.

1.2 Allowed Claim: A Claim that has been filed before the Effective Date or listed in the Debtor's Schedules, the allowed amount will be the claimed or scheduled amount, provided no objection to the Claim is or has been filed within 30 days of the Effective Date.

1.3 Allowed Secured Claim: An Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff.

1.4 Allowed General Unsecured Claim: An Unsecured Claim against the Debtor to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to Section 506(a) of the Bankruptcy Code.

1.5 Bankruptcy Code: Title 11 of the United States Code.

1.6 Bankruptcy Court: The United States Bankruptcy Court for the Northern District of Oklahoma.

1.7 Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to 28 U.S.C. Section 2075.

1.8 Case: The Chapter 11 Bankruptcy Case commenced by the Debtor in the United States Bankruptcy Court for the Eastern District of Oklahoma, Case No. 18-80810.

2

1.9     Claim: Right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and includes a claim against property of the Debtor.

1.10    Class: A category of holders of Claims as described in Articles III and IV of the Plan.

1.11    Confirmation Date: The date the Confirmation Order is entered.

1.12    Confirmation Order: The order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.13    Debtor: Jeanette Leann Hunter.

1.14    Disputed Claim: Alleged Claims against the Debtor as to which an objection has been filed within 30 days of the Effective Date and which objection has not been determined by a Final Order and which has not been withdrawn on or before the Confirmation Date.

1.15    Effective Date: The 15th day after the Confirmation Date.

1.16    Entity: Person, estate, trust, Governmental Unit and United States Trustee.

1.17    Executory Contracts: All unexpired leases and executory contracts for which performance remains on both sides to the extent that failure to perform would constitute a material breach.

1.18    Filing Date: July 23, 2018.

1.19    Final Order: An order of the Court which has not been reversed, stayed, modified or amended and the time to appeal from to seek review or rehearing of such order shall have expired and which shall have become final in accordance with the Bankruptcy Rules and the Federal Rules of Civil Procedure.

1.20    Impaired Class: That Class of Claims which by virtue of its treatment under the Plan are determined to be impaired under the provisions of Section 1124 of the Bankruptcy Code.

1.21    Person: Any natural person, corporation, limited or general partnership.

1.22    Plan: This Plan of Reorganization as set forth herein in its entirety, and all addenda, exhibits, schedules, releases and other attachments thereto as may be amended or supplemented from time to time.

1.23    Pro-rata: The same proportion that a Claim in a particular Class bears to the aggregate amount of all Claims in such Class.

1.24    Schedules: The Schedules and Statement of Financial Affairs filed on July 23, 2018 by the Debtor, as they may be supplemented and amended.

## ARTICLE II
## EXECUTION AND IMPLEMENTATION OF THE PLAN

2.1     General.

Except as otherwise provided in the Plan, on the Effective Date all assets of the bankruptcy estate shall vest in the Debtor free and clear of all liens, claims, encumbrances and interests, but subject to the rights of holders of Allowed Claims to obtain distributions provided in the Plan. The Debtor shall administer her business and property from and after the Effective Date.

The Debtor shall be responsible: (a) for making the distributions in accordance with the Plan; and (b) for her affairs from and after the Effective Date.

The Debtor shall provide for the payment to creditors under this Plan of all or such portion of her earnings from personal services and collection of rent after the commencement of this Case and other future income as necessary for the execution of the Plan.

From and after the Effective Date, the Debtor may retain such professionals as she deems appropriate; and compensate such professionals without prior approval of the Bankruptcy Court. However, all parties seeking payment or reimbursement of attorney's, accountant's or other professional fees incurred from and after the Filing Date through the Effective Date, must obtain approval of the Bankruptcy Court for such payment pursuant to a motion or application for such payment filed not later than 30 days after the Effective Date.

The Debtor shall seek closing of this Case before the entry of her discharge. The Debtor anticipates seeking the closure of this Case after payments have begun to creditors, resolution of any Claim objections, and allowance of professional fees at which time the Debtor believes this Case shall be fully administered under Bankruptcy Rule 3022. Furthermore, the Debtor anticipates re-opening her Case (and paying the appropriate fee to re-open) approximately 60 months after the first payment is made under the Plan for purposes of this Court entering a discharge of her debts.

### 2.2 Cancellation of Notes, Leases and Instruments.

On the Effective Date, the respective rights and obligations of the Debtor and each holder of a Claim existing as of the Effective Date shall be terminated and canceled except to the extent of a right to receive a distribution under the Plan. The promissory notes and mortgages held by claimants with Allowed Secured Claims shall remain in effect except as modified by this Plan. Confirmation of the Plan shall create a new contract between the Debtor and her creditors enforceable by any court with competent jurisdiction.

### 2.3 Preservation of Rights of Action.

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, the Debtor shall have the right to enforce any claims, rights and causes of action, including, but not limited to Bankruptcy Code Sections 329, 510, and 544 through 550 inclusive. The Debtor may, in her sole discretion, pursue or refrain from pursuing those rights or causes of action, as appropriate, in accordance with what is in her best interests. **No claims, rights, or causes of action are known at this time.**

### 2.4 Objections to Claims.

Objections to Claims, including 11 U.S.C. Section 506 Claims and Administrative Expense Claims, shall be filed with the Bankruptcy Court within 30 days of the later of (1) the Effective Date or (2) the date when the Claim or Administrative Expense Claim was filed. The Debtor shall have standing to file and prosecute such objections.

### 2.5 Distribution of Property Under the Plan.

The Debtor shall make all distributions under the Plan. The Debtor shall have the authority

4

to make additional interim distributions as she may determine to be appropriate pending a final distribution. The Debtor shall hold sufficient funds in reserve for distribution to holders of Claims to which an objection has been filed.

2.9     Delivery of Distributions.

Distributions to holders of Allowed Claims shall be distributed by mail as follows: (a) at the addresses set forth on the respective proofs of claim filed by such claimant; (b) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of claim; or (c) at the address reflected on the Debtor's Schedules of Assets and Liabilities if no proof of claim is filed and the Debtor has not received a written notice of change of address.

2.10    Limitation of Liability.

Neither the Debtor, nor any of her agents, representatives, or any professional Persons employed by any of them, shall have or incur any liability to any Person or Entity for any act taken or omission made in good faith in connection with or related to formulating, implementing, confirming, or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan.

2.11    Employee Claims and Compensation and Benefit Programs.

The Debtor has no employee benefit plans and programs. The Debtor is not obligated to pay any retiree benefits.

## ARTICLE III
## CLASSIFICATION OF CLAIMS

For purposes of satisfying the Debtor's obligations, the Claims of the creditors are divided into the following Classes:

| | |
|---|---|
| Class No. 1 | Secured Claim of Bank of New York Mellon (secured by 606 SW 3rd Street, Wagoner, Oklahoma) |
| Class No. 2 | Secured Claim of NewRez, LLC (secured by 31258 E. 680 Road, Wagoner, Oklahoma) |
| Class No. 3 | Secured Claim of Wells Fargo Bank (secured by 1506 E. 3rd Street, Okmulgee, Oklahoma) |
| Class No. 4 | Secured Claim of Federal National Mortgage Association (secured by 224 E. 16th Street, Mounds, Oklahoma) |
| Class No. 5 | Secured Claim of First State Bank of Tahlequah (secured by 221 North 3rd Street, Muskogee, Oklahoma) |
| Class No. 6 | Secured Claim of US Bank, National Association (secured by 401 West Broadway Street, Muskogee, Oklahoma) |
| Class No. 7 | Secured Claim of the City of Muskogee (secured by 300 North Main, Muskogee, Oklahoma) |
| Class No. 8 | Secured Claim of The Terry Burnett Trust, Michael G. Davis and Annette E. |

5

Davis (secured by 1320 N. Mill Street, Muskogee, Oklahoma)

Class No. 9     Secured claim of Finesse Construction, LLC (secured by all real estate)

Class No. 10     Secured Claim of the Muskogee County Treasurer (secured by 221 North 3rd Street, Muskogee, 1320 North Mill Street, Muskogee and Three Rivers Pizza Personal Property)

Class No. 11     Priority Claim of the Internal Revenue Service

Class No. 12     Priority Claim of the Oklahoma Tax Commission

Class No. 13     General Unsecured Claims

A summary of the projected Plan payments to creditors are set forth in the attached Exhibit "A".

## ARTICLE IV
## TREATMENT OF CLAIMS

### 4.1 Unclassified Claims (Administrative Expense Claims)

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. The Debtor believes the only Administrative Expense Claims will be those of her attorneys, Riggs Abney Neal Turpen Orbison & Lewis ("Riggs Abney") and the Office of the United States Trustee. As such, the Debtor has not placed the following Claims in any Class.

Administrative Expense Claims of this estate shall be paid in full as follows:

At this time the only Administrative Expense Claims of professionals retained by the Debtor will be the Administrative Expense Claim of the Debtor's legal counsel – Riggs Abney. The amount of the Administrative Expense Claim of Riggs Abney as counsel for the Debtor will be approximately $30,000.00 at confirmation. After reduction for the funds held in trust in the sum of $9,833.00, the amount to be paid is estimated to be in the sum of $20,167.00. Payment of any approved Administrative Expense Claim of Riggs Abney will be paid on the Effective Date, or within thirty (30) days after approval.

Riggs Abney consents to this treatment.

The Office of the United States Trustee incurs an Administrative Expense Claim in the form of a quarterly fee based upon the amount of disbursements made by the Debtor. Any unpaid United States Trustee Fee shall be paid on the Effective Date. Furthermore, the quarterly fee owed to the United States Trustee shall be paid until the Case is closed.

6

Although the Debtor does not anticipate any other Administrative Expense Claims. Any other Administrative Expense Claims incurred pursuant to 11 U.S.C. Section 503 shall be paid upon the allowance of the Administrative Expense Claim. The bar date to file an Administrative Expense Claim is 30 days after the Effective Date.

4.2     Class No. 1 Secured Claim of Bank of New York Mellon Trust Company

Bank of New York Mellon Trust Company ("Bank of New York") possesses a Note and Mortgage recorded March 11, 2005 in the offices of the Wagoner County Clerk on real property described as follows:

> West Fifty (50) feet of Lot Five (5) and the East Twenty-five (25) feet of Lot Four (4), Block Three Hundred Seventy-Eight (378), City of Wagoner, Wagoner County, State of Oklahoma, according to the recorded Plat thereof, aka 606 SW 3rd Street, Wagoner, Oklahoma.

The Proof of Claim filed by Bank of New York on October 23, 2018 sets forth that the amount of its Claim is $55,596.27. The arrearage is $6,500.00.

The amount of Bank of New York's Allowed Secured Claim as of July 23, 2018 was $55,695.27. This Allowed Secured Claim shall be satisfied by continued monthly payments of $355.20 made by the Debtor to Bank of New York until paid in full as required by the Home Affordable Modification Agreement and Mortgage. The Debtor's payments shall begin on the Effective Date of the Plan.

As of July 23, 2018, the arrearage was $3,396.41. By the time the Plan will be confirmed or authority is given to make adequate protection payments, the Debtor will be an additional eight (8) months in arrears in her payments to Bank of New York. The amount of arrearage is projected to be $6,600.00 at confirmation. This Arrearage Claim shall be satisfied by 60 monthly payments of $110.00 beginning on the Effective Date of the Plan.

Bank of New York shall retain its lien on the above-described property.

This is an Impaired Class.

4.3     Class No. 2 Secured Claim of NewRez, LLC

NewRez, LLC ("NewRez") is the transferee is Claim No. 17 (Ditech Financial, LLC). As such, NewRez possesses a Note and Mortgage dated March 9, 2015. The Mortgage was recorded in the offices of the Wagoner County Clerk on real property described as follows:

> Lots Thirty-six (36), and Fifty-three (53), Block Two (2), Wise Subdivision, Wagoner County, State of Oklahoma, according to the recorded Plat thereof, aka 31258 E. 680 Road, Wagoner, Oklahoma.

7

The Proof of Claim filed by Ditech Financial, LLC on November 21, 2018 sets forth that the amount of the claim is $34,647.48. Pursuant to the Agreed Order Terminating Stay, the arrearage is $2,202.18.

The amount of NewRez's Allowed Secured Claim as of July 23, 2018 was $23,647.18. This Allowed Secured Claim shall be satisfied by continued monthly payments of $266.65 made by the Debtor to NewRez until paid in full as required by the Note and Mortgage. The Debtor's payments shall begin on the Effective Date of the Plan.

The Debtor has been paying the arrearage claim pursuant to the Agreed Order Terminating Stay via monthly payments of $337.20. The arrearage claim will be satisfied by continued monthly payments of $337.20 through May 2019.

NewRez shall retain its lien on the above-described property.

This is an Impaired Class.

4.4    Class No. 3 Secured Claim of Specialized Loan Servicing, LLC

Specialized Loan Servicing, LLC ("Specialized Loan") is the transferee of Claim No. 16 (Wells Fargo). As such Specialized Loan possesses a Note and Mortgage dated June 5, 2005. The Mortgage was recorded June 14, 2005 in the offices of the Okmulgee County Clerk on real property described as follows:

> The West Eight (8) feet of Lot Seven (7), and all of Lots Eight (8), Nine (9), and Ten (10), Block Twelve (12), Golden Hill addition to the City of Okmulgee, Okmulgee County, State of Oklahoma, according to the recorded Plat thereof, aka 1506 E. 3rd Street, Okmulgee, Oklahoma.

The Proof of Claim filed by Wells Fargo on November 21, 2018 sets forth that the amount of its Claim is $33,837.53. The arrearage is $5,956.17.

The amount of Wells Fargo's Allowed Secured Claim as of July 23, 2018 was $33,837.53. This Allowed Secured Claim shall be satisfied by continued monthly payments of $304.33 made by the Debtor to Wells Fargo until paid in full as required by the Note and Mortgage. The Debtor's payments shall begin on the Effective Date of the Plan.

As of July 23, 2018, the arrearage was $5,976.17. By the time the Plan will be confirmed or authority is given to make adequate protection payments, the Debtor will be an additional eight (8) months in arrears in her payments to Wells Fargo. The amount of the total arrearage is projected to be $8,520.00. This Arrearage Claim shall be satisfied by 60 monthly payments of $142.00 beginning on the Effective Date of the Plan.

Wells Fargo shall retain its lien on the above-described property.

This is an Impaired Class.

8

### 4.5 Class No. 4 Secured Claim of U.S. Bank Trust National Association as Trustee of Chalet Series III Trust

U.S. Bank Trust National Association as Trustee of Chalet Series III Trust ("U.S. Bank") is the transferee is Claim No. 9 (Federal National Mortgage Association). As such, U.S. Bank possesses a Note and Mortgage dated March 9, 2015. The Mortgage was recorded July 22, 2003 in the offices of the Creek County Clerk on real property described as follows:

> Lot Eight (8), and Nine (9), less and except the East Thirty (30) feet of Lot Eight (8), in Block Twelve (12), Highlands Addition to the Town of Mounds, Creek County, State of Oklahoma, according to the recorded Plat thereof., aka 224 E. 16th Street, Mounds, Oklahoma.

The Proof of Claim filed by Fannie Mae on September 28, 2018 sets forth that the amount of its Claim is $55,936.66. The arrearage is $6,326.42.

The amount of U.S. Bank's Allowed Secured Claim as of July 23, 2018 was $55,936.66. This Allowed Secured Claim shall be satisfied by continued monthly payments of $595.43 made by the Debtor to Fannie Mae until paid in full as required by the Note and Mortgage. The Debtor's payments shall begin on the Effective Date of the Plan.

As of July 23, 2018, the arrearage was $6,326.42. By the time the Plan will be confirmed or authority is given to make adequate protection payments, the Debtor will be an additional eight (8) months in arrears in her payments to U.S. Bank. The amount of the total arrearage is projected to be $11,090.40. This Arrearage Claim shall be satisfied by 60 monthly payments of $184.94 beginning on the Effective Date of the Plan.

Fannie Mae shall retain its lien on the above-described property.

This is an Impaired Class.

### 4.6 Class No. 5 Secured Claim of First State Bank of Tahlequah

First State Bank of Tahlequah ("First State Bank") possesses a Note and Mortgage dated June 1, 2009. The Mortgage was recorded June 5, 2009 in the offices of the Muskogee County Clerk on real property described as follows:

> A part of Lot 8 in Block 8 in the City of Muskogee, Muskogee County, State of Oklahoma, more particularly described as follows: Beginning at a point on the East line of said Lot 8, 77 feet Southerly from the Northeast corner of said Lot; thence Southerly along the East line of said Lot a distance of 51.7 feet; thence Westerly along the South line of said Lot a distance of 100 feet to a point on the East line of a 14 foot alley; thence Northerly along the East line of said alley a distance of 48.7 feet; thence Easterly on a line parallel with and 77 feet South

of the North line of said Lot and along the South line of a 5-1/2 foot walkway (formerly a part of the 11 foot alley) a distance of 100 feet to the point of beginning.

AND

That part of a 14 foot alley, between Court Street and Wall Street, which was formerly a part of Lot 8, in Block 8, more particularly described as follows: Beginning at a point on the South line of said Lot, 61 feet East from the Southwest corner of said Lot 8; thence Easterly, a distance of 7 feet on said line, parallel with the South line of said Lot 8; thence Northerly a distance of 48.7 feet on a line parallel with the Easterly line of said Lot 8; thence Westerly on a line parallel with the North line of said Lot a distance of 7 feet; thence Southerly on a line parallel with the Easterly line of said Lot a distance of 48.7 feet to the point of beginning.

AND

A part of Lot 8 in Block 8 in the City of Muskogee, more particularly described as follows: Beginning at a point on the East line of said Lot 8, 77 feet Southerly from the Northeast corner of said Lot; thence Northerly along the East line of said Lot 8 a distance of 5-1/2 feet; thence Westerly parallel to the North line of said Lot a distance of 100 feet to a point on the East line of a 14 foot alley; thence Southerly along the East line of said alley a distance of 5-1/2 feet; thence Easterly on a line parallel with and 77 feet South of the North line of said Lot and along the South line of an 11 foot alleyway a distance of 100 feet to the point of beginning, a/k/a 221 North 3rd Street, Muskogee, Oklahoma, aka 221 N. 3rd Street, Muskogee, Oklahoma, aka 221 N. 3rd Street, Muskogee, Oklahoma ("Doyle Bland Building').

The Proof of Claim filed by First State Bank on November 25, 2018 sets forth that the amount of its Claim is $967,529.00.

The amount of First State Bank's Allowed Secured Claim as of July 23, 2018 was $967,529.00. This Allowed Secured Claim shall be satisfied by continued monthly payments of $6,564.56 made by the Debtor to First State Bank until paid in full as required by the Note and Mortgage. The Debtor's payment shall begin on the Effective Date of the Plan.

By the time the Plan will be confirmed or authority is given to make adequate protection payments, the projected amount of the arrearage will be $55,000.00. This Arrearage Claim shall be satisfied by 60 monthly payments of $916.00 beginning on the Effective Date of the Plan.

First State Bank shall retain its lien on the above-described property.

This is an Impaired Class.

10

### 4.7 Class No. 6 Secured Claim of U.S. Bank National Association

U.S. Bank National Association ("US Bank") possesses a Note and Mortgage dated October 8, 2008. The Mortgage was recorded on October 20, 2008 in the offices of the Muskogee County Clerk on real property described as follows:

> Shadow Wood Mall: The Easterly 75 feet of Lot 1 in Block 9 in the City of Muskogee, according to the recorded Plat thereof, Muskogee County, Oklahoma, aka 401 W. Broadway Street, Muskogee, Oklahoma.

The Proof of Claim filed by U.S. Bank on November 13, 2018 sets forth that the amount of its Claim is $225,994.71. The Debtor has been paying adequate protection payments each month in the sum of $819.49 to US Bank. These payments shall continue until the Effective Date.

The amount of U.S. Bank's Allowed Secured Claim as of July 23, 2018 was $225,994.71. This Allowed Secured Claim shall be satisfied in monthly payments amortized over 120 months at 6% interest. The monthly payment shall be $1,620.00 and payments shall begin on the Effective Date.

US Bank shall retain its lien on the above-described property.

This is an Impaired Class

### 4.8 Class No. 7 Secured Claim of the City of Muskogee

The City of Muskogee ("Muskogee") filed a Notice of Dilapidation and Lien on August 8, 2016 in the offices of the Muskogee County Clerk on real property described as follows:

> All of Lot Ten (10) and the Southerly Twenty-Five (25) feet of Lot Nine (9), all in Block Fifteen (15) in the City of Muskogee, Muskogee County, State of Oklahoma, more particularly described as follows: Beginning at the Southwest corner of said Lot Nine (9) and running thence Northeasterly along the East line of Main Street, a distance of 25 feet; thence Southeasterly in a direct line parallel with the Southerly line of said Lot Nine (9) a distance of 171 feet more or less to the right of way of the Missouri, Kansas & Texas Railroad; thence Southwesterly a distance of 25 feet on the boundary line of said right of way to the Southeast corner of said Lot Nine (9); thence northwesterly along the Southerly line of said Lot Nine (9) to the Pont of Beginning, Muskogee County, State of Oklahoma.

The claim will be satisfied in full by either surrender of the property or a sale.

This is an Impaired Class

4.9 Class No. 8 Secured Claim of Terry Burnett Trust, Michael G. Davis and Annette E. Davis

The Terry Burnett Trust, Michael G. Davis and Annette E. Davis ("Burnett Trust") possess a Note and Mortgage. The Mortgage was recorded June 30, 2009 in the offices of the Muskogee County Clerk on real property described as follows:

> Indian Springs Executive Center: A tract of land in Lot 10 of Harvison Subdivision to the City of Muskogee, State of Oklahoma, more particularly described as follows: Beginning at a point of 60.0' South and 25.0' East of the Northwest corner of said Lot 10; thence East of the Northwest corner of said Lot 10; thence East along a line parallel to the North line of said Lot 10, a distance of 300.00'; thence South along a line parallel to the West line of said Lot 10, a distance of 200.0'; thence West along a line parallel to the North line of said Lot 10, a distance of 300.0'; thence North along a line parallel to the West line of said Lot 10, a distance of 200.0' to the point of beginning, being platted out of a part of the NW 1/4 of the NW 1/4 and part of the W 1/2 of the SW 1/4 of the NW 1/4 and a part of the N 1/2 of the NE 1/4 of the SW 1/4 of the NW 1/4 and a part of the SW 1/4 of the NE 1/4 of the SW 1/4 of the NW 1/4 of Section 24, Township 15 North, Range 18 East of the Indian Base and Meridian, Muskogee County, Oklahoma.

The Proof of Claim filed by the Burnett Trust on September 12, 2018 sets forth that the amount of its Claim is $258,874.67.

The Burnett Trust has agreed to an allowed claim in the amount of $128,874.55. This claim shall be satisfied in full via the sale of the property. Once the Burnett Trust has been paid the sum of $128,874.55, the Note shall be paid in full and it will release the Mortgage.

This is an Impaired Class

4.10 Class No. 9 Secured Claim of Finesse Construction, LLC

Finesse Construction, LLC ("Finesse") filed a Statement of Judgment in the offices of the Okmulgee County Clerk on September 29, 2017 in the offices of the Wagoner County Clerk, on May 22, 2017 in the offices of the Muskogee County Clerk, on May 22, 2017 and on May 22, 2017 in the offices of the Creek County Clerk. The Statement of Judgment encumbers all of the Debtor's real property.

The Proof of Claim filed by Finesse Construction on July 31, 2018 sets forth that the amount of its Claim is $61,964.61.

Finesse Construction has agreed to an allowed claim in the sum $46,843.82. This amount will be satisfied in full via the sale of the Mill property. Upon satisfaction, Finesse Construction will release the Statements of Judgment in Wagoner, Muskogee, Okmulgee and Creek Counties.

12

This is an Impaired Class

### 4.11 Class No. 10 Secured Claim of Muskogee County Treasurer

The Muskogee County Treasurer filed Claim No. 7 on September 5, 2018 as a secured claim in the sum of $15,525.00. Muskogee County asserts a claim in and to the following assets:

221 North 3rd, Muskogee, Oklahoma (Doyle Bland Building): $16,400.86
1320 North Mill, Muskogee, Oklahoma (Indian Springs Executive Center): $4,277.94
Three Rivers Personal Property: $797.61

This claim will be satisfied as follows: The sum of $4,277.94 will be paid at closing of the sale of the Indian Springs Executive Center. The sum of $797.61 shall be paid in full at closing of the Three Rivers Pizza. The remaining allowed secured claim in the sum of $16,400.86 on the Doyle Bland Building will be paid with interest at 5% per annum amortized over 60 months in the amount of $309.50. The payments shall begin on the Effective Date and continuing each month thereafter until paid in full.

The Muskogee County Treasurer shall retain its liens on its collateral.

This class is impaired.

### 4.12 Class No. 11 Priority Claim of the Internal Revenue Service

The Internal Revenue Service filed Claim No. 2 on July 30, 2018 in the amount of $13,030.59 seeking a Priority Claim in the amount of $12,029.65 and a General Unsecured Claim in the amount of $1,000.94. The Priority Claim includes $10,897.69 for estimated taxes due for unfiled FICA returns for 2016-2018.

The Debtor has completed all required returns.

The Allowed Priority Claim shall be $3,502.34. The Debtor shall pay this Allowed Priority Claim in full on the Effective Date.

This class in not Impaired.

### 4.13 Class No. 12 Priority Claim of the Oklahoma Tax Commission

The Oklahoma Tax Commission filed Claim No. 10 on October 1, 2018 as a priority claim in the amount of $473.48 and as a general unsecured claim of $23.50. The priority claim is filed as estimated taxes due from sales tax for May and June 2018.

The Debtor shall pay this Allowed Priority Claim in full on the Effective Date.

This class in not Impaired.

### 4.14 Class No. 13 Unsecured Claims

All other creditors not set forth and classified above are deemed General Unsecured Creditors. The Allowed General Unsecured Creditors that filed Claims total $32,606.05.

The Allowed General Unsecured Claims shall be paid $8,152.00 on a pro-rata basis on the Effective Date, $8,152.00 on a pro-rata basis three (3) months after the Effective date, $8,152.00 on a pro-rata basis six (6) months after the Effective Date and $8,275.77 on a pro-rata basis nine (9) months after the Effective Date. The Debtor estimates each Allowed General Unsecured Claim will receive a distribution of 100%.

A schedule of the Allowed General Unsecured Claims and each creditor's monthly payment is set forth in the attached Exhibit "C".

This is an Impaired Class.

## ARTICLE V
## EXECUTORY CONTRACTS

The Debtor knows of no Executory Contracts and if Executory Contracts exist, the Debtor rejects those Executory Contracts. The other party to an Executory Contract that has been rejected may file a proof of claim for damages by reason of the rejection. Proofs of claim for rejection damages must be filed within 30 days of the Effective Date. A Claim resulting from rejection of an Executory Contract shall constitute a Class 13 Claim to the extent it is allowed by the Bankruptcy Court.

## ARTICLE VI
## ACCEPTANCE OF PLAN: EFFECT OF REJECTION

Each Impaired Class of creditors with Allowed Claims against the Debtor shall be entitled to vote separately to accept or reject the Plan. A Class of creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class that have accepted or rejected the Plan. In the event any Impaired Class of creditors with Claims against the Debtor shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor shall request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

## ARTICLE VII
## DISCHARGE

Confirmation of the Plan does not discharge any debt provided for in the Plan until the Bankruptcy Court grants a discharge on completion of all of the payments (except on modified mortgages) under the Plan, or as otherwise provided in 11 U.S.C. Section 1141(d)(5). Payments on

mortgages modified by the Plan shall not be considered "payments under" the Plan for purposes of this paragraph or 11 U.S.C. Section 1141(d)(5)(A), and the non-completion of payments on those mortgages shall not prevent the Debtor from receiving a discharge upon her completion of all other payments required by this Plan.

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

9.1 <u>Amendments to Legal Documents</u>: As of the Confirmation Date of this Plan, legal documents between the Debtor and her creditors are amended in accordance with the terms set forth in Article IV.

Because of the binding effect of confirmation of the Plan as described above, no new documents shall be required to be executed pursuant to the Plan except any which are specially called for by the Plan or by the claimant. Rather, the provisions of the Plan itself shall have legal effect. However, if the Debtor is agreeable, any legal documents, the terms of which have become confusing because of the binding effect of the Plan may be amended to conform with the provisions of the Plan. Any such amendment shall specifically refer to the provision of the Plan allowing such amendment in conformity with the Plan. In the event of any conflict in interpretation of such newly executed documents, the provisions of the Plan shall control. Any further modification of the rights of any party following confirmation of the Plan and which are inconsistent with the provisions of the Plan shall specifically indicate that such modification is made with fair and consideration and shall recite such consideration, otherwise, the Debtor shall not be bound by such modification.

Notwithstanding anything contained here, the Debtor shall have the right to request the Bankruptcy Court to disallow any Claim of any Entity from which property is recoverable under the Bankruptcy Code.

9.2 <u>Compliance with Tax Requirements</u>: The Debtor will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

9.3 <u>Grace Period</u>: All payments due to be paid after the Effective Date on a monthly basis shall be past due 10 days after their due date. If the payment of any sums, or the performance of any act, is scheduled to occur on a Saturday, Sunday or holiday on which national banks are closed for business, the payment or performance shall be timely if made or performed on the next day.

9.4 <u>Retention and Enforcement of Claims, Causes of Action and Avoidance Powers</u>: This Plan provides that all claims, rights, avoidance powers, rights to object to Claims, and all other legal or equitable rights, claims or actions which the Debtor has brought or conceivably could have been brought in her capacity as a Debtor, including without limitation, avoidance and other actions contemplated in Chapter 5 of the Bankruptcy Code, shall be retained and may be maintained, enforced and/or prosecuted by the Debtor post-Confirmation Date, and the Bankruptcy Court will retain jurisdiction to hear and resolve all such matters. **At this time, the Debtor is not aware of any such claims.**

15

Case 18-80810    Doc 146    Filed 03/05/19    Entered 03/05/19 11:06:16    Desc Main
Document    Page 15 of 17

The Debtor shall be deemed to be the duly appointed representative of the estate, as contemplated by Section 1123(b)(3)(B) of the Bankruptcy Code.

9.5     Notices: All notices required to be made to the Debtor in accordance with the Plan shall be in writing and mailed to Scott P. Kirtley, 502 W. 6th Street, Tulsa, Oklahoma 74119.

9.6     Estimation of Claims: To the extent necessary to obtain confirmation of this Plan, the Debtor moves the Court, pursuant to Sections 502(c) and 506(a) of the Bankruptcy Code to estimate and/or value any Disputed Claims or Classes whose Claims require estimation and/or valuation in order to obtain confirmation, and to make appropriate provisions in the Confirmation Order regarding such estimations and/or valuations.

9.7     Injunctions: Without in any way limiting the effect of Sections 524 or 1141 of the Bankruptcy Code, unless otherwise provided in the Plan, all injunctions or stays provided for in the Case pursuant to Sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall remain in full force and effect until this Case is closed.

## ARTICLE X
## JURISDICTION OF THE COURT

To the extent permitted by the Bankruptcy Code or other applicable law, the Bankruptcy Court shall retain general jurisdiction of this Case until the closing of this Case, for at least the following purposes:

10.1    The classification of Claims of any creditors, the re-examination of Claims which have been estimated for purposes of voting, and the determination of such objections as may be filed to creditors' Claims. The estimation or failure by the Debtor to object to or to examine any Claim for the purpose of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine the Claim in whole or in part as to the allowability for payment.

10.2    The determination of any rejection, assumption, or assumption and assignment of any Executory Contract, to hear and determine, and, if need be, to liquidate any and all Claims arising therefrom, and to adjudicate any other issues related thereto.

10.3    The determination of applications, adversary proceedings and contested matters that arise or pending within 30 days of the Effective Date.

10.4    The determination of all questions and disputes to the extent jurisdiction is given this Court pursuant to the Bankruptcy Code and Rules.

10.5    The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

10.6    The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code.

10.7 The enforcement and interpretation of the terms and conditions of this Plan.

10.8 The entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor made under the Bankruptcy Code and under this Plan, and the imposition of such limitations, restrictions, terms and conditions of such title, rights and powers as this Bankruptcy Court may deem necessary.

10.9 The entry of an order concluding and terminating this Case.

10.10 The determination of applications for allowances of compensation and reimbursement of expense and reasonableness of any fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan.

10.11 The Bankruptcy Court shall retain jurisdiction of all parties until the Plan has been fully implemented and the Case is closed.

## ARTICLE XI
## MODIFICATION OF THE PLAN

This Plan may be amended or modified by the Debtor at any time prior to the Confirmation Date upon such notice as the Bankruptcy Court may require. After the Confirmation Date, the Debtor may, with the approval of the Bankruptcy Court and so long as it does not materially and adversely affect the interests of creditors, remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of this Plan.

    RIGGS, ABNEY, NEAL, TURPEN,
    ORBISON & LEWIS

    s/Karen Carden Walsh
    Karen Carden Walsh, OBA #14690
    502 W. 6th Street
    Tulsa, Oklahoma 74119
    (918) 587-3161
    (918) 587-9708 (fax)

    Attorneys for Jeanette Hunter